# BREDHOFF & KAISER, P.L.L.C.
*Attorneys & Counselors*

Elisabeth M. Oppenheimer
Cole D. Hanzlicek
805 Fifteenth St. NW, Suite 1000
Washington, D.C. 20005
(202) 842-2600 TEL
(202) 842-1888 FAX

**VIA CM/ECF**

The Honorable Arun Subramanian
Courtroom 15A
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *American Federation of Teachers, et al. v. Goldstein, et al.*,
              Case No. 1:25-cv-03072-AS (S.D.N.Y.)

Dear Judge Subramanian:

      Plaintiffs submit this supplemental letter-brief pursuant to the Court's direction at the preliminary injunction hearing on April 30, 2025, to address the issue of irreparable harm and the scope of the proposed remedy.

## I.    Plaintiffs Have Shown Irreparable Harm.

      **A.**    The Court asked Plaintiffs to supplement their opening and reply briefs with their best argument for irreparable harm based on facts more indirect than an employer's outright refusal to negotiate. Despite a diligent search, Plaintiffs have not found cases that specifically address a union's irreparable harm on facts exactly parallel to this case, and respectfully submit that the absence of such cases is because the current situation is unprecedented.

      However, the cases previously cited are not limited to harm that is caused by an outright refusal to negotiate. The caselaw establishes that unions are irreparably harmed whenever the collective bargaining process is impaired or delayed. ECF No. 10 at 24–25; ECF No. 30 at 4. "[D]elay is ultimately corrosive to the collective bargaining process itself," *Emhart Indus., Hartford Div. v. NLRB*, 907 F.2d 372, 379 (2d Cir. 1990), because it "impair[s] the union's ability to function effectively . . . giving the impression to members that a union is powerless." *NLRB v. WPIX, Inc.*, 906 F.2d 898, 901 (2d Cir. 1990); *accord Mattina v. Chinatown Carting Corp.*, 290 F. Supp. 2d 386, 394 (S.D.N.Y. 2003). For that reason, an employer's refusal to bargain in good faith has "long been understood as likely causing an irreparable injury to union representation." *Frankl v. HTH Corp.*, 650 F.3d 1334, 1362 (9th Cir. 2011).

      In labor law, an employer's failure to bargain in good faith is not limited to an outright refusal to negotiate. Bad faith bargaining also includes "surface bargaining"—a term describing an employer that "conduct[s] negotiations as a kind of charade or sham, all the while intending to avoid reaching an agreement." *Cont'l Ins. Co. v. NLRB*, 495 F.2d 44, 48 (2d Cir. 1974). Indeed, the Second Circuit has affirmed a finding that an employer engaged in surface bargaining even though it continued to meet with the union because it only "made itself available for approximately one day per month, . . . in the late afternoon" for short bargaining sessions, some of which "were ended abruptly . . . without explanation." *Bryant & Stratton Bus. Inst., Inc. v. NLRB*, 140 F.3d 169, 182–83 (2d Cir. 1998). Any such conduct that damages the collective

bargaining process creates irreparable harm, because it makes members believe that "the benefits of unionization are lost." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1192 (9th Cir. 2011). That is especially so for unions negotiating a "first contract," where bargaining units are "highly susceptible to management misconduct." *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 239 (6th Cir. 2003) (quotations omitted).

      **B.**      The loss of FMCS mediators has not only created significant delays but has also created numerous situations closely analogous to surface bargaining, bad faith bargaining, or an outright refusal to bargain.

For instance, Plaintiff UFT's negotiations for a successor contract at Merrick Academy completely stalled without an FMCS mediator, who had helped the parties make substantial progress after UFT filed unfair labor practice charges in August 2024 over the employer's bad faith bargaining. Trager Decl. ¶¶ 3–12. While the parties met nine times from September 2024 to March 2025 with the FMCS mediator, they have not met once since they lost him. Trager Suppl. Decl. ¶ 3. The "inability to make progress" has been "very frustrating to [UFT's] members," and both the union and employer were concerned that after another year without a contract, "staff at Merrick Academy are actively looking for employment elsewhere," meaning that "the Union will lose members and support, and the school loses veteran teachers." *Id.*[1]

Plaintiff UFT's negotiations for a first contract at Bronx Global Learning Institute for Girls have dragged on for "nearly 7 years" because "the Employer has failed to bargain in good faith." *Id.* ¶ 6. During that time, "the Union has successfully defended against a decertification petition," but nevertheless "support for the Union has eroded" because the represented "staff is disillusioned with the bargaining process and how long it is taking to get to a first contract." *Id.* "With the FMCS mediator's help, the parties were finally getting close to an agreement." *Id.* Without the FMCS mediator, UFT has to pay a private mediator, meaning that the parties "will not be able to hold as many mediated bargaining sessions, there will be more delay," and the "likelihood of a decertification petition increases every day the bargaining process drags on." *Id.*

AFSCME affiliate Council 31 and the Thrive nursing home called in an FMCS mediator to break a stalemate, and had one helpful session. Thornton Decl. ¶ 12. Since the parties lost their FMCS mediator, however, they have returned to stalemate and are no longer at bargaining table. *Id.* The union is preparing for a strike, *id.* which is often the only way a union can move an intransigent employer. Similarly, UFCW affiliate Local 2013 has held only one totally unproductive session with the Grand Manor nursing home since they lost their FMCS mediator; the members have authorized a strike, and "ask every day about striking." Pitman Decl. ¶ 6.

These harms are all irreparable for the same reasons that surface bargaining, refusal to bargain, or bad faith bargaining are irreparable. When a union can make no progress on collective bargaining negotiations, members must work under expired contracts or no contracts, and the union continually loses strength. Even if the court reaches a final ruling on the merits for Plaintiffs in August, by that time their "position in the [workplace] may have already deteriorated to such a degree that effective representation is no longer possible." *Seeler v.*

---

[1] Undersigned counsel has been informed that to break the stalemate, the school and the union have very recently agreed to hire a private mediator; to limit cost, however, the school wants to minimize time spent with the mediator, which would not be necessary with an FMCS mediator.

*Trading Port, Inc.*, 517 F.2d 33, 38 (2d Cir. 1975).

    **C.**    These harms are also irreparable because "there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). The government asserted at the hearing that this case "isn't Humpty Dumpty." But the facts and the government's own arguments show that it is: absent preliminary relief, the *status quo ante* cannot "be put together again."

    1.  If the Court issues a final order in Plaintiffs' favor in August, there will be no way to look backwards at the contract negotiations that have occurred (or failed to occur) in the meantime and determine what the parties might have achieved with an FMCS mediator, and there is certainly no way to return them to that position. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952) (granting injunction and noting that damages were of "such nature as to be difficult, if not incapable, of measurement"). Consistent with this, just yesterday, a court granted a temporary restraining order where "the lack of access to [agency] survey data will immediately reduce the bargaining power of all AFSCME-affiliated unions representing library employees around the country, and this harm will be irreparable because once a CBA is executed, it is a binding contract with a fixed duration." *Am. Libr. Ass'n v. Sonderling,* 2025 WL 1262054, at *2 (D.D.C. May 1, 2025) (cleaned up); *cf. Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 474 (S.D.N.Y. 2020) ("[I]f some potential voters are improperly dissuaded from exercising their franchise, it is unlikely those voters can be identified, their votes cannot be recast, and no amount of traditional remedies such as money damages would suffice after the fact." (quotations omitted)).

    2.  The government's own arguments also show that absent preliminary relief, it will be impossible to put FMCS together again. The government asserted that it would be extremely difficult to bring FMCS mediators back to work now because there is no place for them to work. If that is so—when the RIF notices have not even gone into effect (they begin to take effect May 10th)—it will be much harder at the end of this litigation, even on an expedited schedule. Mediators will need to get other jobs to support themselves and cannot easily be replaced with new hires; office spaces will be sold or leased; the lone FMCS employee monitoring thousands of notices and requests for assistance (which must be analyzed individually to determine if FMCS services are needed) will fall behind. This is why other courts addressing agency dismantling have concluded that dismantling is an irreparable harm. *See, e.g.*, *Widakuswara v. Lake*, 2025 WL 945869, at *9 (S.D.N.Y. Mar. 28, 2025); *Nat'l Treasury Emps. Union v. Vought*, 2025 WL 942772, at *41 (D.D.C. Mar. 28, 2025).

    In short, Plaintiffs' ongoing harms cannot be remedied later, only prevented now.

    **D.**    Finally, Plaintiffs' harms are also irreparable because they cannot recover the expense of private mediators retained during the period that Congressionally-mandated free mediation services are unavailable. At the hearing, the government did not contest that Plaintiffs would be unable to recover damages for having to hire private mediators to replace the cost-free services of FMCS mediators because "money damages are prohibited in APA actions." *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020). Accordingly, as the Second Circuit has held, money damages here "are irreparable." *Id.*

    Resisting this conclusion, the government nevertheless argued that nominal damages

("one dollar") suffered in APA actions do not constitute irreparable harm. But these are not nominal money damages. As Plaintiffs have attested, the cost of hiring a private mediator is a significant drain on a union's finances. *E.g.*, Trager Suppl. Decl. ¶ 5 (UFT paying $500/hour for private mediator).[2] Those costs will skyrocket if a union is forced to hire a private mediator for every contract it negotiates. Dashefsky Decl. ¶¶ 9–11; Tuck Decl. ¶ 11. Preparing for a strike is likewise a significant drain on union finances.

The government suggested at the hearing that Plaintiffs do not actually *need* to hire mediators, so they have brought any monetary harm on themselves. But Plaintiffs are not spending money to advance "abstract social interests." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024). Rather, some unions have concluded that they *must* hire private mediators in the absence of FMCS's help so they can fulfill their core organizational mission—collective bargaining. Trager Suppl. Decl. ¶ 5; Walters Suppl. Decl. ¶ 3; Belovin Decl. ¶ 7. Other unions have concluded they must divert resources to preparing for a strike, *see* Thornton Decl. ¶ 12; Pitman Decl. ¶ 6, which is costly and risky for both the union and its members but is the union's most powerful weapon to force an intransigent employer to bargain in good faith. In *New York*, the Second Circuit never suggested that the organizational plaintiffs whose mission had been "perceptibly impaired" should simply forego their mission, 969 F.3d at 60–62, as the government appears to suggest here. Rather, the Second Circuit found that the diversion of resources constituted an irreparable harm. *Id.* at 86; *accord, e.g.*, *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) ("[O]bstacles [that] unquestionably make it more difficult for [plaintiff] to accomplish [its] primary mission . . . provide injury for purposes . . . [of] irreparable harm."). The same result should obtain here.

**E.**    Finally, the government itself made clear that FMCS has already been significantly dismantled, making preliminary injunctive relief necessary to preserve an effective final remedy should Plaintiffs prevail on the merits.

Contrary to the government's contention, this case is no different from other agency dismantling cases. FMCS has lost well over 90% of its employees, and more than 96% of its mediators. *Cf. Widakuswara*, 2025 WL 945869, at *8–9 (retention of sixty-four staff was "hardly sufficient" when 2,000 had been terminated, especially when agency had "not provided any reassurance that these sixty-four recently re-instated employees can carry out all of USAGM's statutory mandates"). Indeed, the General Counsel of the National Labor Relations Board

---

[2] Counsel has confirmed the government's representation at the hearing that UFCW Local 135, which has hired its former FMCS mediator as a private mediator, received an email from one of the few remaining FMCS mediators about ongoing bargaining. That email, which is attached as Exhibit 1, said only that "If you need my help don't hesitate to contact me." UFCW Local 135 decided to proceed with paying the former FMCS mediator after determining that (1) the new mediator was not likely to have sufficient availability for the complex bargaining; (2) the parties were deep into negotiations, and it would be difficult for someone new to catch up; and (3) the former FMCS mediator already understood the case well. Undersigned counsel has also confirmed that CIR SEIU, as well as negotiators involved in two of the fifteen sets of local negotiations described in the Guzynski Declaration, received similar emails. But these vague offers of unspecified help do not replace the much more substantial services FMCS provided numerous unions prior to the challenged actions, nor do they constitute evidence that FMCS can fulfill its statutory obligations with just five mediators.

acknowledged in a recent letter to a union, attached hereto as Exhibit 2, that FMCS's mediation services are "extremely limited at this time."

The government also suggested at the hearing that FMCS is fulfilling its statutory mandate with five mediators, but as the Plaintiffs' evidence shows, FMCS is unquestionably providing radically diminished services from those it was providing in early March. Moreover, two former FMCS mediators with decades of experience have provided unrebutted evidence that FMCS cannot fulfill its statutory functions with five mediators. Kelleher Decl. ¶ 9; Ramirez Decl. ¶ 27. As the former mediator who previously oversaw FMCS's entire mediation staff explained, an FMCS with only five mediators "would not be a scaled-down FMCS—it would be a symbolic shell of the agency, unable to deliver on its statutory mission or public trust." Ramirez Decl. ¶ 27.

## II. The Proper Remedy Is the Relief Requested in Plaintiffs' Revised Proposed Order

Plaintiffs have submitted a revised proposed order that is consistent with the "ordinary result" in APA cases to "vacate[] the challenged agency rules rather than merely provid[e] injunctive relief that enjoin[s] enforcement of the rules against the specific plaintiffs." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 831 (2024) (Kavanaugh, J., concurring) (quotations omitted). Were it otherwise, and APA courts were required to limit relief to the parties that challenge agency actions, then courts "would be drawing . . . line[s] which the agency itself has never drawn," running afoul of the fundamental principle that "such determination[s] should be made . . . , as an initial matter, by the agency rather than by the court." *Harmon v. Thornburgh*, 878 F.2d 484, 495 (D.C. Cir. 1989).

There is no reason to depart from the ordinary rule here. As a practical matter, as explained in Plaintiffs' reply brief, piecemeal relief is unworkable. ECF No. 30 at 10–11. Although there is one other lawsuit challenging the dismantling of FMCS (as part of a much broader challenge brought by a group of nineteen states), no decision has been issued in that case. *See Rhode Island v. Trump*, Case No. 1:25-cv-00128-JJM (D.R.I.). Moreover, even if the Rhode Island court should decline to grant a preliminary injunction, such a decision would not conflict with a grant of a preliminary injunction and a vacatur of FMCS's actions by this Court. A decision that *states* do not have standing or irreparable harm would say nothing about Plaintiffs' claim here, and a decision that the Rhode Island plaintiffs are unlikely to succeed on the merits would not apply here, where the government has not contested the merits.

The government seemed to suggest at the hearing that Plaintiffs could be granted relief without requiring FMCS to return affected employees to active-duty status. But simply adding Plaintiffs' interrupted negotiations to the already unsustainable caseloads of the five existing mediators is not meaningful relief—and will be even less meaningful as Plaintiffs themselves undertake more negotiations requiring FMCS assistance, or more unions facing similar problems seek to join this lawsuit. If the Court decides to order any more limited remedy, Plaintiffs respectfully request that the Court order FMCS to return enough staff to work to ensure that the more limited remedy can actually be carried out. But, for all the reasons laid out above, the only way to preserve the possibility of complete and universal relief at the end of this litigation is to enter an order now that restores the *status quo* as it existed before March 14, 2025, and Plaintiffs respectfully request that this Court enter such an order.

Dated: May 2, 2025

Respectfully submitted,

*/s/ Elisabeth Oppenheimer*
Elisabeth Oppenheimer*
(*Lead Trial Counsel*)
Cole Hanzlicek*
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth St, N.W., Suite 1000
Washington, D.C. 20005
(202) 842-2600
(202) 842-1888 (fax)
eoppenheimer@bredhoff.com
chanzlicek@bredhoff.com

*Counsel for Plaintiffs*

*Admitted *Pro Hac Vice*