

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street*
*New York, New York 10007*

May 2, 2025

**VIA ECF**
Honorable Arun Subramanian
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:   *American Federation of Teachers, AFL-CIO, et al. v. Goldstein, et al.*,
            No. 25 Civ. 03072 (AS)

Dear Judge Subramanian:

      This Office represents Gregory Goldstein, in his official capacity as Acting Director of the Federal Mediation and Conciliation Service ("FMCS"), the United States of America, the United States Office of Management and Budget ("OMB"), and Russell T. Vought, in his official capacity as the Director of the OMB (collectively, "Defendants" or the "Government") in the above-referenced action, in which Plaintiffs seek to enjoin the continued implementation of Executive Order 14,238 with respect to FMCS. Pursuant to the Court's order, we write to provide additional support for two of Defendants' arguments in opposition to Plaintiffs' motion for a preliminary injunction. To the extent that the Court disagrees with the Government's position, the Government has attached a counterproposal to the revised proposed order submitted by Plaintiffs on May 1, 2025 (ECF No. 39). *See* Exhibit A.

      I.      **Plaintiffs' Claimed Economic Harms Are Not Irreparable**

      Plaintiffs fail to demonstrate that their asserted economic losses constitute irreparable harm. Plaintiffs argue that their economic harms are irreparable because money damages are prohibited in APA actions, *see* Plaintiffs' Reply, ECF No. 30, at 11 (citing *New York v. DHS*, 969 F.3d 42, 86 (2d Cir. 2020)). As the Court also correctly observed, the Government has sovereign immunity from such claims, and the Government is not waiving sovereign immunity. But under Plaintiffs' theory, any loss, no matter the size, would be irreparable by virtue of the lack of a legal remedy against the Government. Such an interpretation of "irreparable" harm would stretch the concept past its breaking point. It would conflate the evaluation of whether a plaintiff has shown an injury in fact to establish standing with a showing of irreparable harm in any case involving an economic impact. Every APA case with some aspect of economic harm would be susceptible to preliminary injunction motion practice.

      Notably, the Second Circuit, in stating that "because money damages are prohibited in APA actions, they are irreparable," *New York v. DHS*, 969 F.3d at 86, applied it to a fact pattern where the economic stakes were clearly of a much greater magnitude than what Plaintiffs have alleged here. *Compare id.* (noting that states would be required to undertake "costly revisions" to their benefit systems and that the states would lose approximately $550 million in economic

activity), *with* Declaration of Bruce Todd Walters, ECF No. 32, ¶ 3 (noting that the cost of hiring a private mediator is $1500 per day, split between the parties), and Declaration of Allyson L. Belovin, ECF No. 36, ¶ 7 (stating that a private mediator costs $1000 per day). Critically, Plaintiffs have not provided any information that demonstrates that paying a mediator $750 to $1000 per day for mediation services is so significant that it amounts to irreparable harm with respect to their overall financial condition. *Cf. Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14 Civ. 585 (AJN), 2015 WL 5051769, at *2 (S.D.N.Y. Aug. 26, 2015) (rejecting plaintiff's argument that $3.6 million constituted irreparable harm where plaintiff "made no effort to explain what consequences such an expenditure would have on the company"); *N. Air Cargo v. U.S. Postal Serv.*, 756 F. Supp. 2d 116, 125-26 (D.D.C. 2010) (finding no irreparable harm where plaintiffs "failed to demonstrate how their projected revenue losses and diminished market shares" would impact the "*overall economic health*" of each plaintiff (emphasis in original)).

Moreover, other courts have found that the magnitude of monetary harm is relevant to whether harm is irreparable, even where such damages are unrecoverable. *See LG Electronics U.S.A., Inc. v. Dep't of Energy*, 679 F. Supp. 2d 18, 36-36 (D.D.C. 2010) ("Even assuming LG will not be able to recover monetary damages from DOE, however, the financial impact LG claims it will suffer does not rise to the level of irreparable harm."); *Coal. for Common Sense in Gov't Procurement v. United States*, 576 F. Supp. 2d 162, 169, 169 n.3 (D.D.C. 2008) (rejecting plaintiff's argument that its members would "suffer irreparable harm because lost profits [were] not likely to be recovered later in [the] litigation in the form of damages due to protections of sovereign immunity" where plaintiff's purported economic injury was not "sufficiently grave to constitute irreparable harm"); *see also California Pharmacists Ass'n v. Mawelll-Jolly*, 596 F.3d 1098, 1113-14 (9th Cir. 2010) (requiring a showing that the plaintiff "will lose considerable revenue"); *ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 48 (D.D.C. 2014) (finding economic losses insufficient to qualify as irreparable where the losses were approximately 10% of plaintiff's annual revenue). The costs identified by Plaintiffs are therefore insufficient to qualify as irreparable, and for this reason and those addressed in Defendants' brief, Plaintiffs have failed to demonstrate irreparable harm.

## II. Plaintiffs' Proposed Order Is Vastly Overbroad

Even if the Court is inclined to grant a preliminary injunction over the Government's objections, Plaintiffs are not entitled to the sweeping relief that they seek at this stage of the case, *see* Defs. Opp., ECF No. 29 at 12-13. Their revised proposed order (ECF No. 39) is vastly overbroad and impermissible.[1] Plaintiffs rely on Justice Kavanaugh's concurrence in *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 838 (2024), as support for their argument that they are entitled to "agency-wide preliminary relief," as opposed to tailored relief that addresses the alleged harms to Plaintiffs themselves. Pl. Opp. at 10-11. But Plaintiffs' reliance on *Corner Post* is misplaced, as that case involved the nature of the remedy available at the *conclusion* of an APA case, and did not address the scope of a preliminary injunction issued *prior* to any ruling on the merits of the case. Cases actually addressing preliminary injunctions have not permitted the scope of relief sought by Plaintiffs.

---

[1] Rather than provide a markup of Plaintiffs' revised proposed order, we address the issues with Plaintiffs' proposal in what follows, and attach a counterproposal. *See* Exhibit A.

*Corner Post* involved a challenge to an agency rule by a bank that was not regulated by the rule but was nevertheless negatively impacted by it (an "unregulated plaintiff"). *See* 603 U.S. at 838. Justice Kavanaugh wrote separately from the majority to emphasize that an unregulated plaintiff can still obtain relief under the APA because the APA authorizes vacatur of agency rules for anyone adversely affected by a final agency action. *Id.* at 826-827. Specifically, Justice Kavanaugh observed that pursuant to 5 U.S.C. § 706(2), the APA "empowers federal courts 'to hold unlawful and set aside agency action.'" *Id.* at 826 (citing APA). He explained that "federal courts have long understood § 706(2) to authorize vacatur of unlawful agency rules, including in suits by unregulated plaintiffs who are adversely affected by an agency's regulation of others." *Id.* But this entire discussion is premised on the relief that Courts can provide to plaintiffs *at the conclusion of the APA proceeding*. Justice Kavanaugh did not address what relief may be permissible on a preliminary injunction motion because the *Corner Post* appeal followed a final decision on the merits. Notably, Justice Kavanaugh stated that "[w]hen a federal court *concludes* that an agency adjudicative order is unlawful, the court must vacate that order." *Id.* at 830. There is nothing in the context of a motion for a preliminary injunction motion that invites a court to *conclude* that an agency action is unlawful. Rather, at most, the Court is evaluating whether a plaintiff has a *likelihood of success on the merits*. Indeed, at this procedural phase of the case, the agency has not yet assembled the administrative record, and the Court necessarily has not reviewed it. Accordingly, the remedy available at the conclusion of an APA case that Justice Kavanaugh addressed does not speak to the remedy available at the preliminary injunction stage of the case.

But there is Supreme Court precedent addressing what relief is available at the preliminary injunction phase of a case. The Supreme Court has long held that that an injunction should not provide "a remedy beyond what [is] necessary to provide relief" to the injured parties. *Lewis v. Casey*, 518 U.S. 343, 360 (1996). Indeed, the limited purpose of a preliminary injunction "is merely to preserve the relative position *of the parties* until a trial on the merits can be held." *Univ. of Tex. C. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added). Accordingly, in issuing an injunction, the Court "is not vested with sovereign powers to declare conduct unlawful; its jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court." *Alemite Mfg. Cop. V. Staff*, 42 F.2d 832, 832 (2d Cir. 1930) (L. Hand, J.).

The relief sought by Plaintiffs in their proposed order vastly exceeds that which would preserve the relative position of the parties until the final decision that the Court anticipates issuing in just a few months, and should be rejected for that reason. *Jayaraj v. Scappini*, 66 F.3d 36, 40 (2d Cir. 1995) (stating that the Court considers only "the harm arising during the interim between the request for an injunction and final disposition of the case on the merits."). Specifically, the declarations submitted by multiple Plaintiffs address specific alleged harms stemming from stalled mediations when a mediator from FMCS could no longer participate. *See, e.g.*, Declaration of Dalia Thornton, ECF No. 17, ¶ 12 ("Since [the mediator being put on leave], negotiations have broken down, the parties are not at the table, and AFSCME Council 31 is preparing for a possible strike.").

Instead of addressing a remedy that would provide a mediator to assist the union in this mediation, Plaintiffs instead propose wholesale changes to the operations of FMCS prior to any ruling on the merits. Plaintiffs are seeking to:

3

- fundamentally restructure how FMCS currently operates by "[r]ecinding any policy or practice" regarding what disputes it will mediate throughout the country;

- determine that *all* Reduction-in-Force notices must be rescinded irrespective of their impact on Plaintiffs' allegedly stalled mediations, or whether former employees have retired;

- require the restoration of all "mediation, training and dispute-resolution services" that have been in place "prior to March 14, 2025, at the same level of service" without a merits determination of which of these services are required by statute;

- demand the provision of "fully equipped office space or permission to work remotely with laptop computers that are enabled to connect securely to FMCS servers, emails, networks, and other digital infrastructure," prior to a merits determination; and

- require FMCS to provide "all other statutorily required services," even though (1) the statutes at issue already impose whatever requirements they impose, and (2) the scope of what those statutes require is part of the merits question that the Court will evaluate.

To the extent the Court is inclined to grant any relief at this stage, the relief should be narrowly drawn to address only substantiated injuries to Plaintiffs in this case. The Government is submitting as Exhibit A a counter-proposal order that addresses relief tailored to Plaintiffs in the event that the Court overrules the Government's objections to the motion and without waiving the Government's argument that Plaintiffs are not entitled to any relief. The proposed order provides that FMCS will offer to mediate, and if the offer is accepted will mediate, the disputes specifically identified by name in Plaintiffs' declarations accompanying the preliminary injunction motion. That proposed relief is specifically tailored to the harm alleged by Plaintiffs through their declarations. In addition, although not referenced in the counter-proposal order as it goes beyond the harm actually alleged by the specific Plaintiffs in this case, FMCS is willing to meet and confer with Plaintiffs about additional disputes where a mediator could be provided between now and the decision on the merits in August that could be handled at current staffing levels of FMCS, even if Plaintiffs did not file a declaration regarding these disputes.

4

5

      We thank the Court for its consideration of this letter.

                                  Respectfully submitted,

                                  JAY CLAYTON
                                United States Attorney

                        By:    */s/ Lawrence H. Fogelman*
                                LAWRENCE H. FOGELMAN
                                REBECCA L. SALK
                                Assistant United States Attorneys
                                86 Chambers Street, Third Floor
                                New York, NY 10007
                                Tel: (212) 637-2719/2614

cc: Elizabeth Oppenheimer
    BREDHOFF & KAISER, P.L.L.C.
    805 Fifteenth St., N.W., Suite 1000
    Washington, D.C. 20005
    *Counsel for Plaintiffs*
    (VIA ECF)