UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN FEDERATION OF
TEACHERS, AFL-CIO, *et al.,*

                Plaintiffs,

      - against –

ANNA DAVIS, in her official capacity as
Agency Head – General Counsel Performing
the Duties of the Director of the Federal
Mediation and Conciliation Service*, et al.,*

            Defendants.

**No. 25 Civ. 3072 (AS)**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' SUMMARY JUDGMENT MOTION**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Tel:   (212) 637-2719/2614
*Attorney for Defendants*

LAWRENCE H. FOGELMAN
REBECCA L. SALK
*Assistant United States Attorneys*
   – Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................... 1

BACKGROUND.............................................................. 2

   I.   FMCS and Executive Order No. 14,238 ................. 2

   II.   This Litigation.............................................. 4

LEGAL STANDARDS .................................................... 6

ARGUMENT ................................................................. 8

   I.   Plaintiffs Lack Standing and Their Future Claims Are Not Ripe.............................. 8

      A.   Plaintiffs Lack Standing to Challenge FMCS's Overall Operations.............. 8

      B.   Plaintiffs Lack Standing to Challenge Termination Decisions of FMCS ...... 10

      C.   Plaintiffs' Claims Regarding Potential Future Injury Are Not Ripe............. 12

   II.   Plaintiffs Cannot Obtain Relief Beyond Their Individual Grievances..................... 13

   III.   Plaintiffs Are Not Entitled to Relief under the APA ............................... 14

      A.   The Challenged Actions Are Discretionary and Therefore Unreviewable .... 15

      B.   The Agency's Implementation of the EO Is Not a Reviewable "Agency Action" Action Under the APA................................................. 17

      C.   Plaintiffs Fail to Show that Agency Action Must Be Compelled Under the APA ........................................................... 18

      D.   Plaintiffs Are Not Entitled to the Relief They Seek Under the APA............ 19

   IV.   The Government Is Entitled to Summary Judgment on Plaintiffs' Constitutional Claims ........................................................... 23

   V.   The Court Should Grant the Government Summary Judgment on Plaintiffs' Ultra Vires Claims ........................................................ 25

   VI.   Plaintiffs Have Failed to Establish the Factors Necessary to Obtain a Permanent Injunction......................................................... 27

    A.     Plaintiffs Have Failed to Establish Irreparable Injury ................................. 27

    B.     The Balance of the Equities and the Public Interest Support the
          Government ............................................................................................. 33

CONCLUSION ...................................................................................................................... 34

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adim v. Bragg,*
No. 24 Civ. 4585 (LTS), 2024 WL 4467193 (S.D.N.Y. Oct. 7, 2024) .................................. 10

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump,*
929 F.3d 748 (D.C. Cir. 2019) ...................................................................................... 11, 12

*American Fed'n of Gov't Emps. v. Secretary of the Air Force,*
716 F.3d 633 (D.C. Cir. 2023) .............................................................................................. 11

*Anderson v. State Univ. of New York,*
No. 24 Civ. 2083 (LTS), 2024 WL 3656551 (S.D.N.Y. July 29, 2024) ............................... 10

*Apter v. Dep't of Health & Human Servs.,*
80 F.4th 579 (5th Cir. 2023) ................................................................................................. 26

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................................... 7

*Baker v. Carr,*
369 U.S. 186 (1962) ............................................................................................................. 24

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................................................... 7

*Bennett v. Spear,*
520 U.S. 154 (1997) ............................................................................................................. 18

*Block v. Community Nutrition Inst.,*
467 U.S. 340 (1984) ............................................................................................................. 12

*Buonasera v. Honest Co.,*
208 F. Supp. 3d 555 (S.D.N.Y. 2016) .................................................................................... 7

*California v. Texas,*
141 S.Ct. 2104 (2021) .......................................................................................................... 22

*Camp v. Pitts,*
411 U.S. 138 (1973) ............................................................................................................... 7

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ............................................................................................................... 8

*Chi. & S. Air Lines,*
  333 U.S. 103 (1948)................................................................... 24

*Clinton v. Jones,*
  520 U.S. 681 (1997)................................................................... 25

*CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.,*
  48 F.3d 618 (1st Cir. 1995) ....................................................... 33

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.,*
  603 U.S. 799 (2024)................................................................... 22

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006)................................................................... 10

*Dalton v. Specter,*
  511 U.S. 462 (1994)............................................................. 23, 24

*Daniels v. Moores,*
  No. 24-30-PR, 2025 WL 883035 (2d Cir. Mar. 21, 2025).................... 27

*Dopico v. Goldschmidt,*
  687 F.2d 644 (2d Cir. 1982) ......................................................... 7

*Doran v. Salem Inn, Inc.,*
  422 U.S. 922 (1975)................................................................... 20

*Elgin v. Dep't of the Treasury,*
  567 U.S. 1 (2012) ................................................................. 11, 12

*Expedia, Inc. v. United Airlines, Inc.,*
  No. 19 Civ. 1066 (PKC), 2019 WL 1499269 (S.D.N.Y. Apr. 5, 2019)....... 33

*Fed. Express Corp. v. U.S. Dep't of Commerce,*
  39 F.4th 756 (D.C. Cir. 2022)...................................................... 26

*Fernandez v. Brock,*
  840 F.2d 622 (9th Cir. 1988)....................................................... 16

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
  561 U.S. 477 (2010)................................................................... 25

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.,*
  460 F.3d 13 (D.C. Cir. 2006)....................................................... 17

*Geyen v. Marsh,*
  775 F.2d 1303 (5th Cir. 1985)...................................................... 26

*Gill* v. *Whitford*,
138 S. Ct. 1916 (2018) ............................................................... 10

*Heckler v. Chaney*,
470 U.S. 821 (1985) ................................................................... 15

*Hernandez v. United States*,
939 F.3d 191 (2d Cir. 2019) ....................................................... 7

*In re Bluewater Network*,
234 F.3d 1305 (D.C. Cir. 2000) ................................................ 19

*In re Core Commc'ns, Inc.*,
531 F.3d 849 (D.C. Cir. 2008) ............................................ 18, 19

*Independent Equip. Dealers Ass'n v. EPA*,
372 F.3d 420 (D.C. Cir. 2004) ................................................. 17

*Kel Kim Corp. v. Cent. Markets, Inc.*,
70 N.Y.2d 900, 519 N.E.2d 295 (1987) ................................... 31

*Lampon-Paz v. OPM*,
732 F. App'x 158 (3d Cir. 2018) .............................................. 12

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ................................................................... 15

*Lowel v. Lyft, Inc.*,
352 F. Supp. 3d 248 (S.D.N.Y. 2018) ........................................ 7

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ............................................................. 8, 24

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ............................................. 7, 8, 18, 24

*Madsen v. Women's Health Ctr., Inc.*,
512 U.S. 753 (1994) ................................................................... 22

Makarova v. United States,
201 F.3d 110 (2d Cir.2000) ......................................................... 6

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) ................................................... 24

*Maryland v. King*,
567 U.S. 1301 (2012) ................................................................. 34

*Mississippi v. Johnson,*
    71 U.S. (4 Wall.) 475 (1866) ................................................ 24, 25

*Moore v. Consol. Edison Co. of New York,*
    409 F.3d 506 (2d Cir. 2005) ...................................................... 33

*Morrison v. Olson,*
    487 U.S. 654 (1988) ...................................................................... 25

*Murthy v. Missouri,*
    603 U.S. 43 (2024) .......................................................................... 9

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
    538 U.S. 803 (2003) ...................................................................... 13

*Nat'l Veterans Legal Servs. Program v. United States Dep't of Def.,*
    990 F.3d 834 (4th Cir. 2021) ...................................................... 18

*New York v. DHS,*
    969 F.3d 42 (2d Cir. 2020) .......................................................... 27

*Nken v. Holder,*
    556 U.S. 418 (2009) ................................................................ 27, 33

*Norton v. Southern Utah Wilderness All.,*
    (*SUWA*), 542 U.S. 55 (2004) ...................................................... 17

*Paulino-Santos v. Metro. Transit Auth.,*
    No. 23-CV-3471 (JGLC), 2024 WL 1363574 (S.D.N.Y. Mar. 29, 2024) ................ 7

*Printz v. United States,*
    521 U.S. 898 (1997) ...................................................................... 25

*Purgess v. Parauda,*
    No. 20 Civ. 2984 (RA), 2021 WL 2269540 (S.D.N.Y. June 3, 2021) ................ 30

*R.F.M. v. Nielsen,*
    365 F. Supp. 3d 350 (S.D.N.Y. 2019) .......................................... 7

*Raines v. Byrd,*
    521 U.S. 811 (1997) ........................................................................ 9

*Rhode Island v. Mass.,*
    37 U.S. 657 (1838) ...................................................................... 20

*Rodriguez ex rel. Rodriguez v. DeBuono,*
    175 F.3d 227 (2d Cir. 1999) ...................................................... 28

*Salazar v. King,*
    822 F.3d 61 (2d Cir. 2016) ................................................................. 15

*Sampson v. Murray,*
    415 U.S. 61 (1974) ...................................................................... 27, 33

*Saul v. United States,*
    928 F.2d 829 (9th Cir. 1991) ........................................................... 12

*Schlesinger v. Reservists Comm. to Stop the War,*
    418 U.S. 208 (1974) .......................................................................... 9

*Smith v. City of New York,*
    No. 23 Civ. 8229 (JLR) (RWL), 2024 WL 5301440 (S.D.N.Y. Nov. 14, 2024) ................... 30

*Spokeo v. Robins,*
    578 U.S. 330 (2016) .......................................................................... 9

*St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.,*
    131 F.4th 102 (2d Cir. 2025) ........................................................... 31

*Town of Chester, N.Y. v. Laroe Estates, Inc.,*
    581 U.S. 433 (2017) ........................................................................ 10

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) .......................................................................... 9

*Trump v. CASA, Inc.,*
    606 U.S. ___ (2025) ........................................................... 1, 14, 22-23

*Trump v. New York,*
    592 U.S. 125 (2020) ........................................................................ 13

*United States v. Fausto,*
    484 U.S. 439 (1988) ................................................................... 11, 12

*United States v. Texas,*
    599 U.S. 670 (2023) ............................................................... 20, 21, 22

*Veit v. Heckler,*
    746 F.2d 508 (9th Cir. 1984) ........................................................... 12

*We The Patriots USA, Inc. v. Hochul,*
    17 F.4th 266 (2d Cir. 2021) ............................................................. 33

*Westchester v. U.S. Dep't of Housing and Urban Development,*
    778 F.3d 412 (2d Cir. 2015) ............................................................. 15

*XY Planning Network, LLC v. U.S. Sec. and Exch. Comm'n,*
   963 F.3d 244 (2d Cir. 2020)............................................................... 16

Statutes

5 U.S.C. § 551 ................................................................................... 17

5 U.S.C. § 701 ..................................................................................... 7

5 U.S.C. § 703 ................................................................................... 21

5 U.S.C. § 704 ................................................................................... 17

5 U.S.C. § 706 ........................................................................ 7, 18, 19

29 U.S.C. § 173(b)....................................................................... 16, 27

29 U.S.C. § 158(d)....................................................................... 17, 27

Federal Rule of Civil Procedure 25(d) .............................................. 1

Federal Rule of Civil Procedure 56(a) ........................................... 7, 8

Anna Davis, in her official capacity as Agency Head – General Counsel Performing the Duties of the Director of the Federal Mediation and Conciliation Service ("FMCS"),[1] the United States of America, the United States Office of Management and Budget ("OMB"), and Russell T. Vought, in his official capacity as the Director of the OMB (collectively, "Defendants") in the above-referenced action, respectfully submit this memorandum of law in support of the Government's motion to dismiss, or alternatively, for summary judgment, and in opposition to Plaintiffs' motion for summary judgment.

## PRELIMINARY STATEMENT

Plaintiffs are labor unions that have had labor disputes with employers mediated by FMCS. Several Plaintiffs allege that they were in active mediations in March of 2025 when the assigned FMCS mediator stopped working on their cases, due to the agency actions Plaintiffs challenge in this case. Instead of seeking relief tailored to any harm Plaintiffs allegedly experienced in their specific cases, however, Plaintiffs have instead sought sweeping relief going so far as to wholly prevent FMCS's implementation of Executive Order 14,238. But as the Supreme Court made clear last week in *Trump v. CASA, Inc.*, 606 U.S. ___ (2025), Plaintiffs are not entitled to go beyond their own alleged harms and seek relief relating to FMCS's overall agency operations.

Even apart from the overbroad remedy they seek, Plaintiffs' claims fail since they lack standing to challenge how FMCS is structured. Nor can Plaintiffs stand in the shoes of employees who have been terminated to challenge their terminations. Likewise, Plaintiffs' claims based on future injury are not ripe and must be dismissed. Plaintiffs claims also fail on the merits of the

---

[1] Plaintiffs named Gregory Goldstein, Acting Director of FMCS, as a defendant. However, Mr. Goldstein is no longer the Acting Director of FMCS as of June 28, 2025. Anna Davis is now the Agency Head - General Counsel Performing the Duties of the Director of FMCS. Ms. Davis was therefore automatically substituted as a defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

Administrative Procedure Act ("APA"), the constitutional claims that Plaintiffs allege, and their "ultra vires" arguments. Finally, Plaintiffs have failed to demonstrate irreparable harm and cannot establish the prerequisites necessary to obtain a permanent injunction.

For all these reasons, and as explained below, the Court should grant the Government's motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6), or alternatively, grant the Government's motion for summary judgment and deny Plaintiffs' motion for summary judgment.

## BACKGROUND[2]

### I.      FMCS and Executive Order No. 14,238

Congress established FMCS in 1947 "to prevent or minimize interruptions of the free flow of commerce growing out of labor disputes, to assist parties to labor disputes in industries affecting commerce to settle such disputes through conciliation and mediation." 29 U.S.C. §§ 172, 173(a). Specifically, FMCS services are available "either upon its own motion or upon the request of one or more of the parties to the dispute, whenever in its judgment such dispute threatens to cause a substantial interruption of commerce." *Id.* § 173(b).

On March 14, 2025, President Trump issued Executive Order No. 14,238 (the "Executive Order" or the "March EO"), titled "Continuing the Reduction of the Federal Bureaucracy." Exec. Order No. 14238, 90 FR 13043 (Mar. 14, 2025). The Executive Order called for the "reduction in the elements of the Federal bureaucracy that the President has determined are unnecessary." *Id.* § 1. The Executive Order also directed that FMCS and six other agencies not at issue in this litigation "be eliminated to the maximum extent consistent with applicable law, and such entities shall reduce the performance of their statutory functions and associated personnel to the minimum

---

[2] Because the Government seeks summary judgment on the APA claims based on a certified administrative record, a Rule 56.1 statement is not required. *See* Local Civ. R. 56.1(a) (exempting parties from filing Rule 56.1 Statements in cases involving claims brought under the APA).

presence and function required by law." *Id*. § 2(a). Finally, the Executive Order instructed the head of each agency to submit a report to OMB "confirming full compliance with this order and explaining which components or functions of the governmental entity, if any, are statutorily required and to what extent." *Id*. § 2(b).

FMCS took steps to implement the Executive Order. Greg Goldstein, the Acting Director and Chief Operating Officer of FMCS, submitted a "Report of Full Compliance to the Executive Order *Continuing the Reduction of the Federal Bureaucracy* dated March 14, 2025" to the Office of Management and Budget on March 21, 2025, as required by the Executive Order. Administrative Record, Dkt. 63 ("AR"), Document 12, FMCS_00045-59. In an effort to comply with the Executive Order, FMCS contemplated reducing the number of mediators and supervising mediators from 123 to 86, and reducing staffing levels overall from 208 full-time employees to 119.5 full time employees. *Id*. FMCS_00058-59.

On March 24, 2025, Mr. Goldstein met with representatives of the Department of Government Efficiency "to discuss the future of" FMCS "under current Administration guidance." AR, Document 14, FMCS_00166. The meeting concluded with a "revised staffing plan" of 15 total personnel, including 6 mediators. *Id*. FMCS_00167. FMCS decided to implement Reductions in Force (or RIFs) to reduce staffing levels "necessary to meet the Administration's directive and staffing model." *Id*. Mr. Goldstein concluded: "FMCS leadership is initiating internal steps to ensure compliance while seeking to preserve core statutory functions." *Id*.

In RIF notices, the agency indicated that it would continue to work on mediations involving 1,000 or more bargaining units:

> This RIF is necessary to implement President Donald Trump's Executive Order (s) 14210, dated February 11, 2025, and Executive Order 14238 of March 14, 2025. FMCS is impacted by lack of work due to significant curtailment of duties. The administration's interpretation of substantial impact to interstate commerce under

Taft Hartley is when the dispute involves a bargaining unit of 1000 employees or other metrics or instances as the administration may determine and communicate to FMCS.

AR, Document 38, FMCS_00289. With regard to healthcare disputes, "FMCS will continue to be involved with healthcare strikes when the [bargaining unit size] is 250 or more or as the administration may direct and communicate to FMCS." AR, Document 46, FMCS_00317.

## II.    This Litigation[3]

Plaintiffs are labor unions that "regularly engage the services of FMCS mediators to assist in resolving labor disputes with employers." Plaintiffs' Second Amended Complaint ("Second Amended Compl."), ECF No. 75, ¶ 18. On April 14, 2025, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief against Defendants, an amended complaint on May 2, 2025, and a second amended complaint on June 16, 2025, that added additional labor unions as plaintiffs. *See generally* Second Amended Compl. Plaintiffs allege that Defendants' "dismantling of FMCS" violated the APA because Defendants' actions violate the Take Care Clause and the Separation of Powers Clause of the Constitution, *id.* ¶¶ 156-71, and that the Executive Order itself violates the Separation of Powers Clause of the Constitution. *Id.* ¶¶ 172-74. In addition, Plaintiffs allege that Defendants' actions pursuant to the Executive Order are ultra vires. *Id.* ¶¶ 175-78.

As of March 26, 2025, seven of the Plaintiffs were actively using the services of FMCS mediators in collective bargaining negotiations. *See* Declaration of Miles Trager ("Trager Decl."), ECF No. 11, ¶¶ 9-10 (United Federation of Teachers); Declaration of Jamie Gulley ("Gulley Decl."), ECF No. 12, ¶¶ 7-14 (SEIU Healthcare Minnesota and Iowa); Declaration of Todd Walters ("Walters Decl."), ECF No. 14, ¶¶ 14-15 (United Food and Commercial Workers Local

---

[3] By presenting Plaintiffs' factual assertions in this section, the Government does not expressly or implicitly concede their accuracy.

135); Declaration of Brandon Hemming ("Hemming Decl."), ECF No. 16, ¶ 8 (IAM District 160); Declaration of Dalia Thornton ("Thornton Decl."), ECF No. 17, ¶¶ 11-12 (American Federation of State, County & Municipal Employees, AFL-CIO); Declaration of David Dashefsky ("Dashefsky Decl."), ECF No. 13, ¶¶ 7-8 (SEIU Committee of Interns and Residents); Declaration of Scott DiMauro ("DiMauro Decl."), ECF No. 72, ¶ 8 (Ohio Education Association). After the March EO, the FMCS mediators involved in those negotiations were placed on administrative leave, and those seven Plaintiffs allege that they were unable to continue using the services of FMCS in connection with their ongoing negotiations. Trager Decl. ¶¶ 9-10; Gulley Decl. ¶¶ 7-14; Walters Decl. ¶¶ 14-15; Hemming Decl. ¶ 8; Thornton Decl. ¶¶ 11-12; Dashefsky Decl. ¶¶ 7-8; DiMauro Decl. ¶ 8. These seven Plaintiffs assert that the disruption in FMCS services has imperiled their ability to reach agreements. Trager Decl. ¶¶ 9-10; Gulley Decl. ¶¶ 7-14; Walters Decl. ¶¶ 14-15; Hemming Decl. ¶ 8; Thornton Decl. ¶¶ 11-12; Dashefsky Decl. ¶¶ 7-8; DiMauro Decl. ¶ 9.

Another Plaintiff, United Nurses Association of California/Union of Health Care Professionals ("UNAC/UHCP"), had labor negotiations with FMCS mediators scheduled to begin on May 5, 2025. *See* Declaration of Joe Guzynski ("Guzyinski Decl."), ECF No. 18, ¶¶ 4-7. The FMCS mediators allegedly received RIF notices, but "the bargaining parties paid the three mediators to attend negotiations in May 2025." Supplemental Declaration of Joe Guzynski ("Guzynski Suppl. Decl.), ECF No. 69, ¶ 3. In other words, the parties did engage in mediation notwithstanding staffing reductions at FMCS.

Two other Plaintiffs, International Association of Machinists and Aerospace Wofrkers, AFL-CIO ("IAM") and American Federation of Government Employees ("AFGE"), have collective bargaining agreements with employers requiring the use of an FMCS mediator. *See*

Declaration of Paul Shepherd ("Shepherd Decl."), ECF No. 15, ¶¶ 7-8; Declaration of Amelia Glymph ("Glymph Decl."), ECF No. 19, ¶¶ 3-5. IAM and AFGE therefore assert that they will be unable to enforce their contracts. Shepherd Decl. ¶ 9; Gymph Decl. ¶ 6.

Additional Plaintiffs—such as American Federation of Teachers, AFL-CIO; Service Employees International Union, AFL-CIO; United Food and Commercial Workers, AFL-CIO; American Federation of Labor and Congress of Industrial Organizations, AFL-CIO; and National Education Association—are organizations or federations that represent and/or are composed of affiliated unions. *See* Second Amended Compl. ¶¶ 23, 25, 28, 36, 39. These Plaintiffs broadly allege that their members rely on FMCS for services. *Id*. They have not alleged that there has been any specific disruption to their members' services. *Id*.

The relief sought in the Second Amended Complaint is broad and goes well beyond providing relief to Plaintiffs themselves. Plaintiffs request that the Court "[d]eclare unlawful and set aside Executive Order 14238" as it applies to FMCS. Second Amended Compl. at 43 ("Prayer for Relief"). They further seek a permanent injunction barring the Government from the "dismantling of FMCS" and "implementing Executive Order 14238" as applied to FMCS. *Id*. Plaintiffs also seek the return of "employees to their status prior to the March 14, 2025 Executive Order." *Id*. They further seek to compel FMCS "to resume the mediation services that were being provided as of March 25, 2025." *Id*. They also seek a declaration that the Government's "actions to dismantle FMCS as unconstitutional," "unlawful," and should be "set aside." *Id*.

## LEGAL STANDARDS

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir.2000). Courts in the Second Circuit have found that

standing may be grounds for dismissal under Rule 12(b)(1). *See, e.g. Paulino-Santos v. Metro. Transit Auth.*, No. 23-CV-3471 (JGLC), 2024 WL 1363574, at *5 (S.D.N.Y. Mar. 29, 2024); *Lowel v. Lyft, Inc.*, 352 F. Supp. 3d 248, 254 (S.D.N.Y. 2018); *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 560 (S.D.N.Y. 2016). The burden is on the plaintiff to prove by a preponderance of the evidence that subject matter exists. *See Morrison v. Nat'l Austl. Bank ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept as true the well-pleaded allegations in the complaint and draw all reasonable inferences in favor of the non-movant, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). [4]

The APA, 5 U.S.C. § 701 et seq., provides for judicial review of challenges to final agency actions. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882- 83 (1990). Such judicial review is limited to the administrative record compiled and relied upon by the agency. *See* 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *see also Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982) (APA review must be based on the "facts . . . before the agency at the time it acted"). "[S]ummary judgment is appropriate in APA cases because the questions on review are purely legal and are amenable to summary disposition." *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 360 (S.D.N.Y. 2019). Under Fed. R. Civ. P. 56(a), a court shall grant summary judgment "if the movant

---

[4] Since the Government's Rule 12 arguments are applicable to each of the claims in the Second Amended Complaint, the Government is not filing an answer to the Second Amended Complaint at this time pending the resolution of these cross-motions.

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Government meets this standard here.

## ARGUMENT

### I.     Plaintiffs Lack Standing and Their Future Claims Are Not Ripe

Plaintiffs lack standing to obtain the broad relief they seek, as it goes well beyond addressing the specific labor disputes raised by Plaintiffs. Plaintiffs instead seek wholesale changes to the operations of FMCS, including injunctive relief requiring the reinstatement of personnel who received Reduction in Force notices, and the setting aside of the Executive Order as applied to FMCS. But the Court lacks jurisdiction to address how FMCS is organized and structured, or how it is implementing an Executive Order, since these do not fall within the scope of an "agency action" under the APA. And the Court lacks jurisdiction over the termination of agency personnel since Congress has created a separate statutory scheme that preempts judicial action here.

### A.     Plaintiffs Lack Standing to Challenge FMCS's Overall Operations

The Court should dismiss Plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(1) because Plaintiffs lack the "irreducible constitutional minimum of standing" required to maintain a suit for the sweeping relief that they seek. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff has standing if he or she suffered "(1) an injury that is (2) fairly traceable to a defendant's allegedly unlawful conduct and that is (3) likely to be redressed by the requested relief." *Id.* at 590 (internal quotation marks omitted). While Plaintiffs may have standing to assert their individualized injuries stemming from FMCS not providing mediation services in their specific cases, Plaintiffs lack standing to bring this broad, prospective challenge to operations at FMCS. Federal courts do not sit to "exercise general legal oversight of the Legislative and

Executive Branches," but to redress concrete injuries to specific interests. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021). Plaintiffs must establish that they "[have] suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (internal cites omitted). The Supreme Court emphasized that "standing is not dispensed in gross." *Id.* at 61 (quotation omitted) (holding that the circuit court in that case had erred by treating the plaintiffs and defendants, respectively, "as a unified whole"). Thus, "plaintiffs must demonstrate standing for each claim that they press" against each defendant, "and for each form of relief that they seek." *Id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). The same requirement of careful analysis applies here.

Plaintiffs' main argument is that the Government is engaged in the "effective destruction" of FMCS, Pls. Br. (ECF No. 68) at 9. *See id.* at 14 (claiming Defendants have "slash[ed] FMCS's services."). But Plaintiffs' asserted interest in vindicating the proper operation of FMCS is an abstract and generalized grievance that cannot be redressed by a federal court under Article III. First, a generalized dispute over whether an agency will perform its statutory duties or will have sufficient resources to do so involves no "legally and judicially cognizable" harm. *Raines v. Byrd*, 521 U.S. 811, 819 (1997). Such suits have no "ground[ing] in historical practice" or "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo v. Robins*, 578 U.S. 330, 341 (2016). Second, Plaintiffs lack a particularized interest in safeguarding the separation of powers, because "[a]ll citizens" share "an interest in the independence of each branch of Government." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220, 226- 27 (1974). This "generalized interest … is too abstract to constitute a 'case or controversy' appropriate for judicial resolution." *Id.*; *see also Adim v.*

*Bragg*, No. 24 Civ. 4585 (LTS), 2024 WL 4467193, at *4 (S.D.N.Y. Oct. 7, 2024) (finding plaintiff lacked standing where he only alleged an abstract interest shared by all citizens); *Anderson v. State Univ. of New York*, No. 24 Civ. 2083 (LTS), 2024 WL 3656551, at *3 (S.D.N.Y. July 29, 2024) (dismissing claims for lack of standing where the alleged injuries were "generalized grievances" that plaintiff "suffered in common with people generally" (internal quotation marks omitted)). Third, such a programmatic injury is not redressable, as it would require "interpos[ing] the federal courts as virtually continuing monitors of the wisdom and soundness of … administration, contrary to the more modest role Article III envisions." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346 (2006).

In addition, the particular forms of relief sought in the Second Amended Complaint go well beyond providing a remedy to Plaintiffs' specific grievances arising from their own labor disputes. *See* Second Amended Complaint at 43 ("Prayer for Relief"). But the Plaintiffs must possess standing "for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). The sweeping relief sought by Plaintiffs far exceeds the harms alleged by Plaintiffs. *Compare* Second Amended Complaint at 43 ("Prayer for Relief") (seeking to overturn the Executive Order) *with, e.g.,* Dashefsky Decl. ¶ 8 ("[T]he FMCS mediator was required to cease providing assistance, making it more difficult for the parties to agree on a contract[.]").

To the extent the Court is inclined to grant any relief, Article III—and the related requirement that the remedy sought "be limited to the inadequacy that produced the injury in fact that the plaintiff has established," *Gill* v. *Whitford*, 138 S. Ct. 1916, 1931 (2018)—necessitates that any relief be drawn narrowly to address just the demonstrated injuries to Plaintiffs in this case.

### B.     Plaintiffs Lack Standing to Challenge Termination Decisions of FMCS

To the extent that Plaintiffs attempt to stand in the shoes of FMCS employees who have

been placed on leave to challenge their employment status, Plaintiffs lack standing to do so. That is not a remedy cognizable under the APA. Rather, in the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (1978), Congress established a comprehensive framework for evaluating adverse employment actions against federal employees and presenting an integrated scheme of both administrative and judicial review of challenged personnel practices. In so doing, Congress balanced "the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 445 (1988). With limited exceptions not relevant here, Congress explicitly sought to reduce the participation of the federal courts, preferring the use of the CSRA's grievance procedures over all other remedies.

Specifically, in passing the CSRA, Congress made the Office of Special Counsel, the Merit Systems Protection Board ("MSPB"), and the Federal Labor Relations Authority ("FLRA") the exclusive means for federal employees, applicants, labor unions and other interested parties to raise challenges to final, non-discrimination-related, adverse employment actions. *See Fausto*, 484 U.S. at 455, even when those disputes involve constitutional claims, *see Elgin v. Dep't of the Treasury*, 567 U.S. 1, 10–15 (2012) (citation omitted); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019) ("*AFGE v. Trump*"); *American Fed'n of Gov't Emps. v. Secretary of the Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2023) (the CSRA, together with the Federal Service Labor-Management Relations Statute, "creates an integrated scheme of administrative and judicial review, wherein the Congress intentionally provided—and intentionally chose not to provide—particular forums and procedures for particular kinds of claims." (citations and internal quotation marks omitted)). Congress allowed certain individual federal employees who are affected by agency personnel decisions to challenge those decisions

"by litigating their claims through the statutory scheme in the context of [a] concrete" dispute. *See AFGE v. Trump*, 929 F.3d at *757.

The Supreme Court has long recognized that Congress established the CSRA as a comprehensive scheme covering all matters involving federal employment. *See Fausto*, 484 U.S. at 455. Indeed, the Supreme Court has held that, even if a federal employee was raising constitutional claims, the CSRA imposes an "implied preclusion of district court jurisdiction[.]" *Elgin*, 567 U.S. at 12. The CSRA thus "precludes courts from providing supplemental remedies." *Lampon-Paz v. OPM*, 732 F. App'x 158, 161 (3d Cir. 2018); *Saul v. United States*, 928 F.2d 829, 835–42 (9th Cir. 1991) ("Congress is better equipped than we to strike an appropriate balance between employees' interests in remedying constitutional violations and the interests of the government and the public in maintaining the efficiency, morale and discipline of the federal workforce."); *Veit v. Heckler*, 746 F.2d 508, 510–11 (9th Cir. 1984).

Supreme Court precedent makes clear that when a comprehensive scheme of the sort at issue here permits review at the behest of some types of plaintiffs but not others, it implicitly precludes review by plaintiffs who are not authorized to bring claims. *See Block v. Community Nutrition Inst.*, 467 U.S. 340, 346-47 (1984) (observing that "[i]n a complex scheme, the omission of [a provision for litigation by consumers] is sufficient reason to believe that Congress intended to foreclose consumer participation in the regulatory process"). The same principles fully apply to the CSRA. *See Fausto*, 484 U.S. at 448.

Accordingly, any federal employee who seeks to challenge their termination must do so through this framework, and not through an APA lawsuit brought by labor unions.

### C. Plaintiffs' Claims Regarding Potential Future Injury Are Not Ripe

Article III further requires that the Court only adjudicate those claims that are ripe for

review. Ripeness requires that an alleged injury be "certainly impending"; a claim is not ripe if it is "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (citation omitted). A court lacks jurisdiction over un-ripe claims that do not satisfy the Constitution's case or controversy requirements. "Determining whether administrative action is ripe for judicial review requires [courts] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (citation omitted).

Under these standards, Plaintiffs' alleged potential future injuries cannot form the basis for the Court's subject-matter jurisdiction. Yet Plaintiffs' allegations are replete with speculation about what may or may not happen in the future in the absence of FMCS mediators engaging in negotiations. For example, Plaintiffs speculate, regarding future negotiations, that these "negotiations with employers are *likely* to drag on and deadlock without the services of an FMCS mediator." ECF 10 at 24 (emphasis added); Trager Decl. ¶¶ 11, 19; Gulley Decl. ¶ 11; Thornton Decl. ¶¶ 12, 22; Pls. Br. at 10-11. Plaintiffs also speculate that in the future, "*once* parties reach an impasse in negotiations, they *may* resort to their economic weapons of a strike or a lockout, disrupting labor peace." ECF 10 at 25 (emphasis added); Pls. Br. at 7-8, 10-11; Trager Decl. ¶ 11. Plaintiffs' speculation about the future and what may or may not happen is not ripe for this Court to resolve.

For these reasons, Plaintiffs lack standing to press their claims.

## II.      Plaintiffs Cannot Obtain Relief Beyond Their Individual Grievances

The relief sought by Plaintiffs is impermissibly broad not only from the perspective of standing, but also because it violates the tenet that relief can only be accorded to the parties to that

lawsuit. Specifically, in *Trump v. CASA, Inc.*, 606 U.S. ___ (2025), slip op., the Court explained that: "[N]either declaratory nor injunctive relief . . . can directly interfere with enforcement of contested statutes or ordinances except with respect to particular federal plaintiffs." *Id.* at 7 (internal quotations omitted). The Court has "consistently rebuffed requests for relief that extended beyond the parties." *Id.* There is no historical precedent in equity for the broad relief sought by Plaintiffs to invalidate an Executive Order rather than simply granting relief to the specific Plaintiffs denied mediation services by FMCS. *See id.* at 6 (stating that historically "suits in equity were brought by and against individual parties."). If Plaintiffs demonstrate an entitlement to any relief, it would be to address the alleged harms to Plaintiffs, and not a broader restructuring of FMCS or an invalidation of the agency's implementation of the Executive Order. While the Court acknowledged that "courts of equity may fashion a remedy that awards complete relief," *id.* at 10, Plaintiffs may obtain complete relief by having access to the FMCS services that allegedly had been improperly denied to them without a broader injunction, *id.* at 11 (explaining that relief in birthright citizenship case had been provided to the named plaintiff whose child would not be denied citizenship, but finding that "[e]xtending the injunction to cover all similarly situated individuals would not render *her* relief any more complete.")[5]

### III. Plaintiffs Are Not Entitled to Relief under the APA

Plaintiffs' arguments under the APA rest on a fundamental misunderstanding of the nature of APA review. As an initial matter, agency action is not subject to judicial review where, as here, the action is committed to agency discretion by law. Moreover, judicial review under the APA is limited to review of discrete agency actions or inactions that cause harm to the particular plaintiff.

---

[5] The Court found that nothing in its decision "resolves the distinct question whether the [APA] authorizes federal courts to vacate federal agency action" under Section 706(2) that authorizes courts to "hold unlawful and set aside agency action." That point is discussed *infra*, Section III.C.

The APA does not permit sweeping, programmatic review and judicial superintendence of the manner in which an agency conducts its work. Nor does the APA authorize courts to oversee an agency's reorganization efforts to ensure that an agency does not fall short of its statutory responsibilities in the future. Yet Plaintiffs seek exactly this sort of wholesale review and superintendence of agency operations that the APA does not allow.

## A. The Challenged Actions Are Discretionary and Therefore Unreviewable

Plaintiffs' claims are not reviewable under the APA because the challenged actions are discretionary. Critically, "agency action is not subject to judicial review 'to the extent that' such action 'is committed to agency discretion by law.'" *Lincoln v. Vigil*, 508 U.S. 182, 190-91 (1993) (quoting 5 U.S.C. § 701(a)(2)); *see also Heckler v. Chaney*, 470 U.S. 821, 830 (1985) ("[B]efore any [judicial] review at all may be had, a party must first clear the hurdle of § 701(a)."). This exception to the availability of judicial review applies where "statutes are drawn in such broad terms that in a given case there is no law to apply." *Westchester v. U.S. Dep't of Housing and Urban Development*, 778 F.3d 412, 419 (2d Cir. 2015) (internal quotation marks omitted); *see Salazar v. King,* 822 F.3d 61, 76–77 (2d Cir. 2016) (noting that courts look at statutory text, the agency's regulations, and informal agency guidance that govern the challenged action in considering whether actions are discretionary).

Here, Plaintiffs claim that FMCS mediators stopped working on their mediations despite FMCS's statutory "mandates." *E.g.*, Second Amended Complaint ¶¶ 6, 86, 102. But the provisions of the Taft-Hartley Act on which Plaintiffs rely as the basis for this assertion do not contain a specific, unequivocal command for FMCS to mediate all cases. The Act initially states that: "It shall be the duty of [FMCS], in order to prevent or minimize interruptions of the free flow of commerce growing out of labor disputes, to assist parties to labor disputes in industries affecting

commerce to settle such disputes through conciliation and mediation." 29 U.S.C. § 173(a). This

general command sets forth FMCS's obligations writ large to assist in labor disputes. But the

following more specific section spelling out how FMCS should accomplish this objective provides

FMCS with discretion to decide whether or not to get involved in a specific labor dispute:

> The Service *may proffer* its services in any labor dispute in any industry affecting
> commerce, either upon its own motion or upon the request of one or more of the
> parties to the dispute, *whenever in its judgment such dispute threatens to cause a
> substantial interruption of commerce.* The Director and the Service are directed to
> avoid attempting to mediate disputes which would have only a minor effect on
> interstate commerce if State or other conciliation services are available to the
> parties. Whenever the Service does proffer its services in any dispute, it shall be the
> duty of the Service promptly to put itself in communication with the parties and to
> use its best efforts, by mediation and conciliation, to bring them to agreement.

29 U.S.C. § 173(b) (emphasis added). The use of language such as FMCS "may proffer," and

deference to the "judgment" of FMCS on whether a dispute threatens to "cause a substantial

interruption of commerce," demonstrates the high degree of discretion conferred by Congress on

FMCS. *See XY Planning Network, LLC v. U.S. Sec. and Exch. Comm'n*, 963 F.3d 244, 249 (2d

Cir. 2020) (noting that "may" is "permissive" and "reflects Congress's grant of discretionary

rulemaking authority"); *Fernandez v. Brock*, 840 F.2d 622, 632 (9th Cir. 1988) ("'May' is a

permissive word, and [courts] will construe it to vest discretionary power absent a clear indication

from the context that Congress used the word in a mandatory sense.").

Plaintiffs also rely on the Health Care Amendments of 1974 to argue that FMCS must

mediate all labor disputes in the health care industry, but the language in that statute only requires

FMCS to use its "best efforts" to do so:

> After notice is given to the Federal Mediation and Conciliation Service [of a labor
> dispute], the Service shall promptly communicate with the parties *and use its best
> efforts*, by mediation and conciliation, to bring them to agreement. The parties shall
> participate fully and promptly in such meetings as may be undertaken by the
> Service for the purpose of aiding in a settlement of the dispute.

29 U.S.C.A. § 158(d)(C) (emphasis added). While FMCS is thus required to use its "best efforts," that does not necessarily and unequivocally mean that FMCS is *required* to maintain staffing levels necessary to mediate every health care dispute in the country. A fair reading of the statute is that FMCS should use the resources at its disposal to pursue best efforts at mediation and conciliation of labor disputes in the health care industry. Plaintiffs have not demonstrated that the agency is not currently using its "best efforts" to mediate health care disputes with its current staffing levels.

Because FMCS has discretion in determining whether and how to provide services, the challenged actions are unreviewable.

### B. The Agency's Implementation of the EO Is Not a Reviewable "Agency Action" Action Under the APA

In addition, the APA contemplates judicial review only of "agency action." 5 U.S.C. §§ 704, 551(13). As the Supreme Court has explained, a reviewable "action" is limited to the set of "circumscribed, discrete agency actions" identified in the APA's definition of "action." *See Norton v. Southern Utah Wilderness All.* (*SUWA*), 542 U.S. 55, 62 (2004); *see also* 5 U.S.C. § 551(13). This definition, while expansive, is "not so all-encompassing as to authorize [courts] to exercise judicial review [over] everything done by an administrative agency." *Independent Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (Roberts, J.). Importantly, the APA— reflecting constitutional limits on the judicial role—does not permit "general judicial review of [an agency's] day-to-day operations," *National Wildlife Fed'n*, 497 U.S. at 899; nor does it authorize courts to oversee "the common business of managing government programs," *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 20 (D.C. Cir. 2006). Under these principles, agency plans, strategies, and goals fall outside the APA's defined list of agency actions. *Id.* at 20. Even if a challenged act qualifies as an agency action, it is not reviewable unless it is "final," meaning that it "mark[s] the 'consummation' of the agency's decisionmaking process," and is an action by

which "rights or obligations have been determined," or from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

Plaintiffs' challenge to the implementation of the Executive Order inherently goes beyond FMCS's determination of whether or not to appoint a mediator to the specific cases alleged in the Second Amended Complaint to have been disrupted. Rather, it is fundamentally a challenge to FMCS's operations, including staffing decisions and determinations of criteria in evaluating whether to become involved in a mediation. That is the opposite of the discrete, circumscribed agency action that is required for review under the APA. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 890-91 (1990); *Nat'l Veterans Legal Servs. Program v. United States Dep't of Def.*, 990 F.3d 834, 839 (4th Cir. 2021) (explaining that final agency action does not include conduct like "operating a program").

### C. Plaintiffs Fail to Show that Agency Action Must Be Compelled Under the APA

Even if the APA permitted review of Plaintiffs' claims, they cannot meet the high standard required to "compel agency action unlawfully withheld," 5 U.S.C. § 706(1). This mandamus-like standard applies since the crux of Plaintiffs' claim is that FMCS has failed to appoint mediators to assist with Plaintiffs' mediations. "The only agency action that can be compelled under the APA is action legally required." *SUWA*, 542 U.S. at 63. In 5 U.S.C. § 706(1), "the APA carried forward the traditional practice prior to its passage, when judicial review was achieved through" writs like mandamus, a remedy "normally limited to enforcement of a specific, unequivocal command, the ordering of a precise, definite act . . . about which [an official] had no discretion whatever." *Id.*

Analysis under Section 706(1) "starts from the premise that issuance of the writ [of mandamus] is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). Reflecting the

traditional limitations on mandatory injunctions issued to co-equal branches, "[i]n the case of agency inaction" the Court "not only must satisfy [itself] that there indeed exists such a duty, but that the agency has 'unreasonably delayed' the contemplated action." *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000) (quoting 5 U.S.C. § 706(1)). And even once there has been an "unreasonable delay" in fulfilling the required statutory duty, the court must evaluate "whether the agency's delay is so egregious as to warrant mandamus." *Core Communications, Inc.*, 531 F.3d at 855.

Yet Plaintiffs have not identified any "specific, unequivocal command" such that the Court could "order[] … a precise, definite act." *SUWA*, 542 U.S. at 63. Plaintiffs' most specific claim is that FMCS mediators stopped working on their mediations as a result of the conduct that Plaintiffs challenge in this suit. But as explained, *see supra* Section III.A, the provisions of both the Taft-Hartley Act and the Health Care Amendments of 1974 on which Plaintiffs rely as a basis for providing mediation services do not *require* that FMCS mediate all cases. To the contrary, the discretionary language at issue in this case is a far cry from a specific, unequivocal requirement necessary to establish a mandamus-type remedy. Since Plaintiffs thus have identified no "transparent violations of a clear duty to act," let alone one that has been withheld so long as to be "unreasonably delayed," *Bluewater*, 234 F.3d at 1315, they have not demonstrated a violation of the APA. Accordingly, Plaintiffs are not entitled to a mandamus-style remedy under the APA.

### D. Plaintiffs Are Not Entitled to the Relief They Seek Under the APA

As addressed in Section II, Plaintiffs impermissibly seek a broad equitable remedy that goes beyond addressing the harm to specific parties. Nothing in the APA provides statutory authorization to award such expansive relief. "Traditionally, when a federal court finds a remedy merited, it provides party-specific relief, directing the defendant to take or not take some action

relative to the plaintiff. If the court's remedial order affects nonparties, it does so only incidentally." *See United States v. Texas*, 599 U.S. 670, 693 (2023) (Gorsuch, J., concurring); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs."). "This tracks the founding-era understanding that courts 'render a judgment or decree upon the right of the litigant[s].'" *Texas*, 599 U.S. at 693 (Gorsuch, J., concurring) (quoting *Rhode Island v. Mass.*, 37 U.S. 657 (1838)). This understanding also "ensures that federal courts respect the limits of their Article III authority to decide cases and controversies and avoid trenching on the power of the elected branches to shape legal rights and duties more broadly." *Id.* at 693-94.

The underpinning for the broad relief sought by Plaintiffs under the APA appears to be the "set aside" language in section 706(2) of the APA. *See* Second Amended Compl. ¶ 164 (requesting that the Court "set aside Defendants' actions in dismantling FMCS"); Second Amended Compl., Prayer for Relief ¶ A (requesting that the Court "set aside Executive Order 14238 . . . as it applies to the FMCS."). But this "set aside" language in section 706(2) of the APA may not be equated with the wholesale vacatur of agency action. As an initial matter, there is nothing in the APA that permits vacatur of agency action, much less an Executive Order issued by the President. *See Texas*, 599 U.S at 695 (Gorsuch, J., concurring) (the APA "does not say anything about 'vacating' agency action ('wholesale' or otherwise).")

The history and structure of the APA support that the better reading of "set aside" is not to interpret it synonymously with "vacate," but rather "set aside" should be understood to mean that in reaching a decision, a court should "disregard" the action taken by the agency in determining the outcome of a case. *Id.* ("Routinely, a court will disregard offensive provisions like these and

proceed to decide the parties' dispute without respect to them."). From a historical perspective, at the time of the APA's adoption, "conventional wisdom regarded agency rules as 'quasi-legislative' in nature." *Id.* at 696. Federal courts have "never enjoyed the power to 'vacate' legislation," but instead possessed "'little more than the negative power to disregard an unconstitutional enactment.'" *Id.* (citation omitted). Interpreting the APA to allow quasi-legislative rules to be vacated (rather than disregarded) would thus be inconsistent with the history of the APA.

The structure of the APA likewise suggests that the "set aside" language in Section 706 does not permit a remedy of vacating agency action. Section 706 is the "Scope of review" section of the APA, not the remedies section. "And ordinarily, when we think about the scope of a court's review, we do not think about the remedies the court may authorize after reaching its judgment on the merits. Instead, we think about the court's decisional process leading up to that judgment." *Texas*, 599 U.S at 696 (Gorsuch, J., concurring). From that perspective, reading "set aside" to mean "disregard" rather than "vacate" fits squarely within how a Court goes about reviewing the questions at issue. *See id.* ("Understanding 'set aside' as a command to disregard an unlawful rule in the decisional process fits perfectly within this design. Understanding the phrase as authorizing a remedy does not.").

Indeed, the "set aside" language does not appear in Section 703 of the APA that specially addresses the remedies available under the APA. Section 703 permits "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction." 5 U.S.C. § 703. "Conspicuously missing from the list is vacatur." *Texas*, 599 U.S at 698 (Gorsuch, J., concurring). It would not make sense for Congress to have listed most remedies in Section 703 "only to bury another (and arguably the most powerful one) in a later section addressed to scope of review." *Id.*

Even if Section 706 could be read to authorize equitable power to vacate agency action, "a district court should think twice—and perhaps twice again—before granting such sweeping relief." *Id.* at 702 (citations and internal quotation marks omitted). As reflected in *Trump v. Casa*, 606 U.S. ___ (2025) discussed *supra* Section II, there is no basis in equity for a universal injunction that goes beyond remedying the harms incurred by the plaintiffs who have brought the lawsuit. The Court has long recognized that "equitable relief must be limited to the inadequacy that produced [the] injury in fact . . . Any remedy a judge authorizes must not be more burdensome [to the defendant] than necessary to redress the complaining parties." *Texas*, 599 U.S. at 702 (Gorsuch, J., concurring) (cleaned up). To grant universal relief under the auspices of vacatur "strains our separation of powers. It exaggerates the role of the Judiciary in our constitutional order, allowing individual judges to act more like a legislature by decreeing the rights and duties of people nationwide." *Id.* at 703. Accordingly, any equitable remedy applied in the nature of vacatur should apply only to the named parties. *See California v. Texas*, 141 S.Ct. 2104, 2115 (2021) (remedies "ordinarily operate with respect to specific parties" rather than "on legal rules in the abstract") (citations and internal quotation marks omitted); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (observing that the "general rule" is that equitable relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.") (citations omitted).

The APA thus does not authorize the broad relief sought by Plaintiffs that goes beyond the alleged disruptions of their own mediations. While Plaintiffs rely heavily on Justice Kavanaugh's concurring opinion in *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 838 (2024), Pls. Br. at 27-28, which would permit vacatur as relief in an APA action, that decision necessarily did not take into account the Court's later ruling in *Trump v. CASA*, 606 U.S. ___

(2025), that equitable remedies do not permit injunctive relief beyond what is required to address the harm to the parties. With respect to statutory interpretation on the meaning of "set aside," the Government respectfully submits that the concurring opinion by Justice Gorsuch in *Texas* is more persuasive than Justice Kavanaugh's concurring opinion in *Corner Post*.

## IV. The Government Is Entitled to Summary Judgment on Plaintiffs' Constitutional Claims

Plaintiffs' claims alleging violations of the Separation of Powers and the Take Care Clause, *see* Second Amended Compl. ¶¶ 161, 172-174, are meritless, and the Government is entitled to summary judgment on them. As a threshold matter, Plaintiffs' asserted separation of powers claim is the same claim discussed above, dressed up in constitutional language—as the Supreme Court has confirmed, "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims." *Dalton v. Specter*, 511 U.S. 462, 473 (1994). In *Dalton*, the Supreme Court rejected the proposition that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id.* at 471. Not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. In reaching this conclusion, the Supreme Court carefully "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* (collecting cases). The Constitution is implicated only if executive officers rely on it as "[t]he only basis of authority" or if the officers rely on an unconstitutional statute. *Id.* at 473 & n.5. Here, Plaintiffs' claims focus entirely on their contentions that Defendants have not acted consistent with statutory obligations. *See, e.g.*, Second Amended Compl. ¶¶ 45-79, 169-170, 177 (describing statutes allegedly violated). Under *Dalton*, such claims cannot succeed.

Plaintiffs' arguments under the Take Care Clause likewise fail on their own merits. *See* Second Amended Compl. at 38. Through the Take Care Clause, the Constitution vests the President with broad, discretionary authority to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. Inevitably, the laws that the President executes are those enacted by Congress. But no court has read the Take Care Clause as opening the door to any plaintiff seeking to challenge the way the President executes Congress's laws. Rather, as the Supreme Court has recognized, the duty of the President when exercising his power to see that the laws are faithfully executed is "purely executive and political," and not subject to judicial direction. *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499 (1866); *see Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 165–66 (1803) ("[T]he President is invested with certain important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character."). To hold otherwise would upset our constitutional scheme of separation of powers and allow judicial superintendence over the exercise of Executive power that the Clause commits to the President alone. *Baker v. Carr*, 369 U.S. 186, 217 (1962) (courts lack jurisdiction over a claim where there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department."); *see also Dalton*, 511 U.S. at 474–75 (judicial review of discretionary Presidential decisions "is not available"); *Lujan*, 504 U.S. at 577 (holding that it would be improper for the courts to take over the President's duty to "take Care that the Laws be faithfully executed" (quoting U.S. Const. art. II, § 3)); *Marbury*, 5 U.S. (1 Cranch) at 170 ("The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion. Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court."); *Chi. & S. Air Lines*, 333 U.S. 103, 114 (1948) (refusing to review President's decision

that "embod[ied] Presidential discretion as to political matters beyond the competence of the courts to adjudicate"); *Mississippi*, 71 U.S. (4 Wall.) at 499.

Nor does the Take Care Clause provide a basis to review the actions of subordinate Executive Branch officials. The Clause speaks only to the President, not to his subordinates, and ensures that the President is principally responsible for the actions of the Executive Branch and directly accountable to the people through the political process. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492–93 (2010) ("It is *his* responsibility to take care that the laws be faithfully executed."); *id.* at 495–97; *see also Printz v. United States*, 521 U.S. 898, 922 (1997); *Morrison v. Olson*, 487 U.S. 654, 689–90 (1988); *Clinton v. Jones*, 520 U.S. 681, 712–13 (1997) (Breyer, J., concurring). A subordinate Executive officer cannot violate the President's duty to faithfully execute the laws.

## V. The Court Should Grant the Government Summary Judgment on Plaintiffs' Ultra Vires Claims

Plaintiffs' arguments that FMCS's actions were ultra vires likewise fail. Plaintiffs argue that FMCS's actions are "beyond the authority of the Executive," Second Amended Compl. ¶ 176, and that "[n]o statute, constitutional provision or other source of law authorizes Defendants to dismantle FMCS in violation of the Labor Management Relations Act," *id.* ¶ 177.

But ultra vires relief is not available where, as here, a statute exists that provides an opportunity for judicial review. The Supreme Court explained:

> Ultra vires review is also unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons "with a meaningful and adequate opportunity for judicial review," or if a statutory review scheme forecloses all other forms of judicial review.

*NRC v. Texas*, 605 U.S. __ (2025), slip op. at 15. Here, the APA defines how a plaintiff can challenge final agency actions. Since Congress has already acted through the APA to determine

the contours of permissible challenges to agency actions, Plaintiffs cannot seek remedies that exceed the scope of the APA under the guise of an ultra vires claim. *See Apter v. Dep't of Health & Human Servs.*, 80 F.4th 579, 593 (5th Cir. 2023) ("[U]nder our precedent, Congress apparently 'did away with the *ultra vires* doctrine and other fictions surrounding sovereign immunity' when it amended the APA in 1976") (quoting *Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985)). Just as the Supreme Court found that the plaintiffs in *NRC v. Texas* "basically dress up a typical statutory-authority argument as an ultra vires claim," Plaintiffs here attempt to dress up an APA claim as an ultra vires claim. *NRC v. Texas*, 605 U.S. __ (2025), slip op. at 15. Indeed, the Court imposed strict limits on ultra vires review to avoid ultra vires review becoming "an easy end-run around . . . judicial review statutes." *Id.* at 14.

Even if ultra vires review were available, and as discussed above it is not in light of the APA, Plaintiffs have failed to establish such a claim. In those courts that recognize non-APA *ultra vires* claims, such "claims are confined to extreme agency error where the agency has stepped so plainly beyond the bounds of its statutory authority, or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court." *Fed. Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 764 (D.C. Cir. 2022) (cleaned up) ("Only error that is patently a misconstruction of the [statute], that disregards a specific and unambiguous statutory directive, or that violates some specific command of a statute will support relief." (cleaned up)).

Plaintiffs allege no such "extreme agency error" that is "beyond the bounds of its statutory authority." *Id.* (cleaned up). As an initial matter, the Executive Order itself *requires* compliance with relevant statutes. The March EO directed that certain agencies including FMCS "be eliminated to the maximum extent *consistent with applicable law*, and such entities shall reduce

the performance of their statutory functions and associated personnel to the minimum presence and function *required by law*." Exec. Order No. 14238, 90 FR 13043 § 2(a) (emphasis added).

While Plaintiffs may disagree with the staffing levels set by FMCS, or would prefer a different application of the term "substantial interruption of commerce," 29 U.S.C. § 173(b), or a different approach as to when FMCS "*may proffer* its services in any labor dispute in any industry affecting commerce," *id.*, or how FMCS would exercise its "best efforts" with the staff that it has to mediate health care disputes, 29 U.S.C.A. § 158(d)(C), Plaintiffs have not demonstrated that the agency's actions exceed the bounds of its statutory authority. *See also supra*, Argument III.A, B.

## VI. Plaintiffs Have Failed to Establish the Factors Necessary to Obtain a Permanent Injunction

Plaintiffs have failed to establish the factors necessary to obtain a permanent injunction. As set forth in *Daniels v. Moores*, No. 24-30-PR, 2025 WL 883035, at *1 (2d Cir. Mar. 21, 2025), in order to obtain a permanent injunction, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at *1 (citations and internal quotations omitted). The third and fourth factors "merge when the Government is the opposing party." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Plaintiffs have not met their burden.

### A. Plaintiffs Have Failed to Establish Irreparable Injury

Plaintiffs have not made any showing that they would suffer irreparable harm absent a permanent injunction enjoining Defendants. As the Supreme Court has articulated, "the basis of injunctive relief in the federal courts has always been irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974). "Irreparable harm is injury that is neither remote nor speculative," *New York*

*v. DHS*, 969 F.3d 42, 86 (2d Cir. 2020) (citation omitted), but rather is "actual and imminent," *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (citation omitted). Plaintiffs have failed to demonstrate irreparable harm.

As reflected in the multiple declarations submitted by Plaintiffs in support of their preliminary injunction motion as well as the additional declarations submitted with their summary judgment motion, the only "actual and imminent" harm alleged is that a mediator from FMCS who had been involved in a particular mediation was not able to continue their work, due to the agency actions challenged in this suit. As previously noted, only seven of the Plaintiffs allege that an ongoing negotiation was disrupted as a result of the March EO. *See supra* at Background Section II. However, the allegations of harm stemming from the alleged disruption of mediation services, summarized in the chart below, are speculative and conclusory, and therefore fail to establish irreparable harm sufficient to justify a permanent injunction:

| Plaintiff | Negotiation at Issue | Alleged Harm Related to Specific Disruption |
|---|---|---|
| United Federation of Teachers ("UFT") | Negotiating a successor agreement between UFT and a charter school in New York City. Trager Decl. ¶¶ 10, 18. | • "I do not think bargaining sessions will be productive without the aid of the FMCS mediator[.]" ¶ 11.<br>• Hiring a private mediator will "essentially require the parties to start over from scratch[.]" *Id.*<br>• "I believe the mediator's cancelation imperils the progress the parties have made … and may prevent the parties from reaching a final agreement." *Id.* ¶ 19. |
| SEIU Healthcare Minnesota and Iowa | Negotiating a contract between 75 employees working at a senior living community called Providence Place. Gulley Decl. ¶¶ 5-10. | • "Without a contract in place, the risk of another work stoppage and disruption to the care of the patients at Providence Place is much higher." *Id.* ¶ 11. |
| Committee of | Negotiating a | • "[T]he FMCS mediator was required to cease |

| | | |
|---|---|---|
| Interns and Residents/SEIU | collective bargaining agreement on behalf of resident physicians at Mass General Brigham in Boston, Massachusetts. Dashefsky Decl. ¶ 8. | • providing assistance, making it more difficult for the parties to agree on a contract[.]" *Id.*<br>• "Not having FMCS mediation will make getting to an agreement more difficult[.]" *Id.* ¶ 9. |
| UFCW Local 135 | Negotiating a successor agreement between workers and with grocery stores Ralphs and Albertsons. Walters Decl. ¶¶ 8-14. | • "[A] strike or lockout could possibly occur at any time" without a mediator from FMCS. *Id.* ¶ 16. |
| IAM District 160 | Negotiating an agreement with MutiCare Health Care system. Hemming Decl. ¶¶ 7-8. | • "There would be a serious impact to the community if this group went on strike over the employer's unwillingness to reach an agreement." *Id.* ¶ 10. |
| American Federation of State, County & Municipal Employees, AFL-CIO | Negotiating new contract at Thrive nursing home. Thornton Decl. ¶ 12. | • "Since [the mediator being put on leave], negotiations have broken down, the parties are not at the table, and AFSCME Council 31 is preparing for a possible strike." *Id.* ¶ 12.<br>• "Not having the benefit of FMCS during current bargaining increases the chances of contentious bargaining leading to delays in reaching an agreement or possible work stoppages." *Id.* ¶ 17. |
| Ohio Education Association | Negotiating a contract with the Granville Exempted Village School District. DiMauro Decl. ¶ 8 | • Claiming that although mediation procedure continued without FMCS with a neutral facilitator, "the loss of FMCS deeply unsettled both teams and compromised he potential for collaborative resolution of difficult issues." *Id.* ¶ 9. |

As an initial matter, Plaintiffs' argument rests on the assumption that an FMCS mediator would have definitively resolved the ongoing negotiations, and that therefore, the disruption in services constitutes a definitive harm. However, Plaintiffs' assumption regarding the success of mediation is entirely speculative. In any event, a delay in an ongoing mediation based on the need

to hire a mediator in the private sector or to continue negotiations without a mediator is not irreparable harm. Also, the mere fact that some Plaintiffs paid a relatively modest amount for private mediators in the absence of a FMCS mediator[6]—a cost they voluntarily undertook that was not required by the Government—is not a sufficient basis to demonstrate irreparable harm. *See* Gov. Letter Brief, dated May 2, 2025, ECF No. 44 (incorporated herein by reference).

Plaintiffs also speculate that a private sector mediator would not be as effective in conducting the mediation. *See, e.g.*, Trager Decl. ¶ 11 ("I do not think bargaining sessions will be productive without the aid of the FMCS mediator . . . I believe private mediators are less effective than FMCS mediators and come at a much higher cost."). But these speculative assertions cannot establish irreparable harm. *See Purgess v. Parauda*, No. 20 Civ. 2984 (RA), 2021 WL 2269540, at *4 (S.D.N.Y. June 3, 2021) (finding "speculative and conclusory statements" insufficient to establish irreparable harm). Nor have Plaintiffs provided factual support for the notion that a mediator from FMCS would necessarily be more effective than a mediator from the private sector. While Plaintiffs allege scenarios where they have made progress under the auspices of a mediator from FMCS, *see, e.g.*, Trager Decl. ¶¶ 8-11, there is no indication that a private sector mediator would be incapable of mediating a dispute to a positive conclusion between the parties. The alleged inconvenience from needing to find a different mediator and any attendant delay does not establish irreparable harm. *Cf. Smith v. City of New York*, No. 23 Civ. 8229 (JLR) (RWL), 2024 WL 5301440, at *2 (S.D.N.Y. Nov. 14, 2024) (denying preliminary injunction where plaintiff would "experience inconvenience but not irreparable harm").

Two of the Plaintiffs likewise speculate that because their collective bargaining agreements

---

[6] Declaration of Bruce Todd Walters, ECF No. 32, ¶ 3 (noting that the cost of hiring a private mediator is $1500 per day, split between the parties), and Declaration of Allyson L. Belovin, ECF No. 36, ¶ 7 (stating that a private mediator costs $1000 per day).

with employers specifically reference the utilization of FMCS resources, the March EO would impact the ability of their members to engage in mediation with counterparties. Shepherd Decl. ¶¶ 7-9; Glymph Decl. ¶¶ 3-5. But, first, Plaintiffs have not demonstrated that FMCS denied requests for the particular services referenced by these Plaintiffs or that the parties could not collectively identify another mediator in the absence of the availability of FMCS services. *See id.* One of the newly added Plaintiffs states that their contract "explicitly provides that FMCS is to be used if the parties cannot agree on an alternative mediator," and that FMCS discontinued mediating the dispute. DiMauro Decl. ¶ 8. The parties nevertheless "proceeded" to mediate their dispute without a FMCS mediator. DiMauro Decl. ¶ 9. Second, nothing prevents Plaintiffs from seeking to re-negotiate that single term of these contracts. Various state laws or the common law may also provide remedies on the grounds of impossibility to the extent that the contracts cannot be performed. *See, e.g.*, *Kel Kim Corp. v. Cent. Markets, Inc.*, 70 N.Y.2d 900, 902, 519 N.E.2d 295, 296 (1987) ("Impossibility excuses a party's performance only when the destruction of the subject matter of the contract *or the means of performance* makes performance objectively impossible.") (emphasis added). In short, these Plaintiffs have not alleged any irreparable harm.

Plaintiffs allege harm not just from specific ongoing disputes between labor and employers where the mediator from FMCS was no longer available, but also based on anticipated future disputes between unions and employers that have not yet occurred. *See, e.g.*, Dashefsky Decl. ¶ 9 (anticipating that for twelve units recently organized it would be harder to negotiate agreements without assistance from FMCS). Such claims are too speculative to justify a permanent injunction. *Cf. St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 107 (2d Cir. 2025) (finding "nonspecific references" to "lost opportunity costs" were not the sort of actual and imminent injury sufficient to justify a preliminary injunction). Indeed, Plaintiffs

acknowledge that a reduced staff of mediators remains employed by FMCS. *See* Second Amended Compl. ¶ 18.

Plaintiffs' allegation about the harms that would follow from an unsuccessful mediation are likewise speculative, as there is no indication that (i) a private sector mediator could not bring any particular mediation to a successful conclusion, (ii) that the parties to the dispute themselves could not resolve it, or (iii) that the anticipated consequences of an unsuccessful negotiation would necessarily follow. For example, Plaintiffs speculate that without the assistance of FMCS, SEIU Healthcare Minnesota and Iowa will not be able to negotiate contracts and that certain entities "are likely to strike without FMCS assisted mediation." Gulley ¶¶ 13-16. But this parade of horribles assumes without evidence that (1) an FMCS mediator would definitively resolve these disputes, thereby avoiding a strike; (2) these entities could not reach a positive outcome through the auspices of a private mediator or by negotiations between the parties themselves without a mediator; and (3) that there would be a strike, which the supporting declaration describes only as "likely." *Id.*[7] Similarly, regarding the ongoing negotiations between Plaintiff UFCW Local 135 and grocery stores Albertsons and Ralphs, UFCW Local 135 acknowledges uncertainty about whether a "bargaining session will be productive without the aid of an FMCS mediator," yet at the same time speculates that "a strike or lockout could possibly occur at any time," which in turn "would have significant impacts on the local economy." Walters Decl. ¶¶ 15-16; *see also* Hemming Decl. ¶ 10 (warning of "serious impact to the community *if* this group went on strike over the employer's unwillingness to reach an agreement.") (emphasis added). These speculative injuries do not constitute irreparable harm necessary to obtain a permanent injunction.

---

[7] Presumably it would be the labor union Plaintiffs themselves that would decide whether or not to strike. Plaintiffs cannot credibly allege that FMCS's failure to mediate a dispute could cause a strike that Plaintiffs themselves can decide to initiate or not.

To the extent that Plaintiffs attempt to stand in the shoes of employees of FMCS who have been placed on leave and may be terminated, as discussed above, Plaintiffs lack standing to assert such harm on their behalf. Furthermore, the irreparable harms pled must be harms *to the Plaintiffs*; Plaintiffs may not rely on alleged harms to third parties in requesting a preliminary injunction, much less a permanent injunction. *See, e.g.*, *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 511 (2d Cir. 2005) (affirming holding that "alleged harm to third parties did not provide plaintiff a basis for a preliminary injunction in this case"); *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618, 622 (1st Cir. 1995) ("the issuance of a preliminary injunction requires a showing of irreparable harm *to the movant* rather than to one or more third parties") (emphasis in original); *Expedia, Inc. v. United Airlines, Inc.,* No. 19 Civ. 1066 (PKC), 2019 WL 1499269, at *6 (S.D.N.Y. Apr. 5, 2019) ("injuries to third parties do not demonstrate that [the movant] itself will suffer irreparable harm.").[8]

For all these reasons, Plaintiffs have failed to demonstrate irreparable harm.

### B. The Balance of the Equities and the Public Interest Support the Government

A permanent injunction is not appropriate for the additional reason that the balance of the equities and the public interest tip in Defendants' favor. *See Nken*, 556 U.S. at 435 (holding that "[t]hese factors merge when the Government is the opposing party"). The relief sought by Plaintiffs

---

[8] But in any event, allegations of adverse employment actions (*i.e.*, placement on paid administrative leave or the termination of an employment contract) can be remedied by money damages at the end of the litigation. "It is well settled . . . that adverse employment consequences are not the type of harm that usually warrants injunctive relief because economic harm resulting from those employment actions is typically compensable with money damages." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir. 2021); *see also Sampson*, 415 U.S. at 91-92 ("[L]oss of income and . . . the claim that her reputation would be damaged . . . falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction[.]").

is much more substantial in scope than the alleged harms stemming from the disruption in mediation services to seven of the Plaintiffs. As discussed above, the harms alleged are too speculative, insufficiently severe, or easily remedied without injunctive relief. By contrast, "[a]ny time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (cleaned up). Accordingly, the balance of equities and public interest tip in favor of the Government.

## CONCLUSION

For all the reasons discussed herein, the Court should dismiss Plaintiffs' Second Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6), or alternatively, grant the Government's motion for summary judgment, and deny Plaintiff's motion for summary judgment. Defendants respectfully request that if this Court grants Plaintiffs' motion and enters injunctive relief, that relief be stayed for a period of seven days to allow the Solicitor General to determine whether to appeal and seek a stay pending appeal.

Dated: July 3, 2025
New York, New York

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By:     */s/ Lawrence H. Fogelman*
LAWRENCE H. FOGELMAN
REBECCA L. SALK
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2800

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the word count limit on memoranda of law is 8,750 words. The Government submitted an application by letter dated July 1, 2025, with Plaintiffs' consent, seeking permission to file a memorandum of law of up to 12,000 words for the reasons set forth in the Government's letter. The Court has not yet ruled on this application. As measured by the word processing system used to prepare it, this memorandum contains 11,149 words.