UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| American Federation of Teachers, AFL-CIO et al.,<br><br>                              Plaintiffs,<br><br>-against-<br><br>Anna Davis, in her official capacity as Agency Head – General Counsel Performing the Duties of the Director of the Federal Mediation and Conciliation Service et al.,<br><br>                              Defendants. | 25-cv-3072 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

A group of labor unions who frequently use the service of a federal mediation agency sued to challenge a policy that sharply curtailed the agency's functions and resulted in the dismissal of most of its staff. Plaintiffs seek a reversal of the policy and have moved for summary judgment. Defendants have cross-moved to dismiss, or in the alternative, for summary judgment. For the following reasons, plaintiffs' motion for summary judgment is GRANTED and defendants' motion for dismissal or summary judgment is DENIED.

## BACKGROUND

The Federal Mediation and Conciliation Service (FMCS) is charged by Congress with "prevent[ing] or minimiz[ing] interruptions of the free flow of commerce growing out of labor disputes." 29 U.S.C. § 173(a). To that end, FMCS "assist[s] parties to labor disputes in industries affecting commerce to settle such disputes through conciliation and mediation." *Id.*

As relevant here, FMCS "may proffer its services in any labor dispute in any industry affecting commerce, either upon its own motion or upon the request of one or more of the parties to the dispute, whenever in its judgment such dispute threatens to cause a substantial interruption of commerce." *Id.* § 173(b). In the healthcare industry, Congress has dictated that FMCS "shall promptly communicate with the parties and use its best efforts, by mediation and conciliation, to bring them to agreement." *Id.* § 158(d)(C).[1]

On March 14, 2025, President Trump signed Executive Order 14238, which directed, among other things, that "the non-statutory components and functions" of FMCS "be eliminated to the maximum extent consistent with applicable law." Exec. Order No. 14238 § 2(a). One week later,

---

[1] Although plaintiffs cite additional statutes involving FMCS, these two are the most relevant for the purposes of this opinion.

in response to the order, then-Acting Director of FMCS Gregory Goldstein submitted a report to Office of Management and Budget (OMB) Director Russell Vought stating that FMCS required a minimum of 86 mediators to fulfill its statutory functions (a reduction from the 123 employed at the time). Dkt. 63-2 at 70. Three days later, Goldstein met with representatives of the Department of Government Efficiency (DOGE). Dkt. 63-2 at 180. The meeting concluded with Goldstein agreeing to a staffing plan with only six mediators. *Id.* at 181. FMCS agreed to implement a "Reduction in Force" (RIF) to lay off the remaining mediators. Dkt. 63-2 at 181; Dkt. 63-7 at 31.

RIF notices issued to separated employees noted that the administration interpreted "substantial impact to interstate commerce" within the meaning of the statute to apply only where either (1) "a bargaining unit of 1000 employees" was involved or (2) "other metrics or instances as the administration may determine and communicate to FMCS" were implicated. Dkt. 63-7 at 80. Separately, FMCS General Counsel Anna Davis clarified in an internal email that the agency would "continue to be involved with healthcare strikes when the [bargaining unit] is 250 or more" employees. Dkt. 63-8 at 34.

Plaintiffs are a group of labor unions, some in the healthcare space and some in other industries, that "regularly engage" FMCS mediators to assist in resolving labor disputes. Dkt. 75 ¶¶ 18, 25–26. Several of the plaintiffs allege they had active mediation sessions scheduled or ongoing at the time of the RIF. Dkt. 75 ¶¶ 129–54.

Plaintiffs filed this lawsuit on April 14 against Goldstein and Vought in their official capacities, and against FMCS and OMB.[2] Dkt. 1. The operative complaint seeks, among other things, (1) a declaration that the executive order is unlawful; (2) injunctive relief barring defendants from implementing the executive order via the reductions in force; and (3) a declaration that defendants' actions are unconstitutional and violate the APA. Dkt. 75 at 43. Plaintiffs have since withdrawn any challenge to the executive order itself and challenge only its implementation. Dkt. 82 at 13 n.2.

Plaintiffs moved for a preliminary injunction. Dkt. 9. After another court issued a preliminary injunction that granted the same relief, *see Rhode Island v. Trump*, 781 F. Supp. 3d 25 (D.R.I. 2025), this Court denied plaintiffs' motion as moot. Dkt. 60. Plaintiffs subsequently moved for summary judgment, Dkt. 67, and defendants cross-moved to dismiss for lack of standing and for failure to state a claim, or in the alternative, for summary judgment. Dkt. 79.

The *Rhode Island* court subsequently granted summary judgment to the plaintiffs in that case, granting much of the same relief sought by the plaintiffs here. *See Rhode Island v. Trump*, — F. Supp. 3d —, 2025 WL 3251113 (D.R.I. Nov. 21, 2025). As the defendants' deadline to file a notice of appeal in that case has not yet passed, *see* Fed. R. App. P. 4(a)(1)(B)(ii) (giving a United States agency 60 days to appeal), this case is not moot, *see* Dkt. 119.

---

[2] Davis has since replaced Goldstein as the acting head of FMCS, so she is substituted as a defendant in place of Goldstein. Fed. R. Civ. P. 25(d).

2

## LEGAL STANDARDS

To survive a motion to dismiss for lack of standing under Rule 12(b)(1), a complaint must "allege[] facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (cleaned up). The Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor," although "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Buday v. New York Yankees P'ship*, 486 F. App'x 894, 895 (2d Cir. 2012) (citations omitted).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a motion to dismiss, the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## DISCUSSION

Plaintiffs challenge defendants' implementation of a policy to limit mediation to a subset of labor negotiations and disputes—those with a bargaining unit size of 1,000 or more in most industries, or 250 or more in the healthcare industry,[3] unless unspecified other criteria are met—which led to defendants' implementation of the RIF.[4] As there does not appear to be any meaningful dispute over any factual questions, the Court applies the same standard to all claims. *See Mendoza v. Perez*, 754 F.3d 1002, 1016 n.9 (D.C. Cir. 2014) ("The standard for resolution of these legal arguments is the same at the motion to dismiss stage as it is on a motion for summary judgment.").

---

[3] The record sometimes refers to "healthcare strikes," but defendants concede that this is merely shorthand for disputes arising in the healthcare industry, not an effort to further narrow the types of disputes that FMCS intends to address under 29 U.S.C. § 158. Dkt. 123 at 2.

[4] The Court uses the phrase "the policy" in this opinion to refer to the bargaining-unit-size threshold. However, as the policy and the RIF are inherently tied together because the policy was used as justification for the RIF, the same APA analysis applies to both.

I. **Plaintiffs have standing to challenge the policy**

Under Article III of the Constitution, a plaintiff must demonstrate an injury in fact that is fairly traceable to the challenged conduct and likely to be redressed by the lawsuit. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The government raises three arguments as to why it believes plaintiffs lack standing, but none is persuasive.

A. **Plaintiffs raise a challenge to a specific action that FMCS took, not an "abstract and generalized grievance"**

Defendants first argue that plaintiffs raise an "abstract and generalized grievance" and ask this Court to "exercise general legal oversight" of the Executive Branch. Dkt. 80 at 17–18. Defendants appear to concede that plaintiffs "may have standing to assert their individualized injuries stemming from FMCS not providing mediation services in their specific cases," but argue that plaintiffs lack an "interest in vindicating the proper operation of FMCS." *Id*. Defendants' argument mischaracterizes the nature of plaintiffs' interest and confuses the existence of an injury with the appropriate scope of relief.

As long as "at least one plaintiff has standing, the suit may proceed." *Biden v. Nebraska*, 600 U.S. 477, 489 (2023). Several plaintiffs have alleged—without contradiction—that the RIF led to delays in their bargaining processes, with some having scheduled bargaining sessions cancelled. Dkt. 68 at 13–14. The Second Circuit has recognized that "delay is ultimately corrosive to the collective bargaining process itself." *Emhart Indus., Hartford Div. v. N.L.R.B.*, 907 F.2d 372, 379 (2d Cir. 1990). It is thus clear that delay is an injury to plaintiffs, given that collective bargaining is one of the principal functions of a union.

Plaintiffs' challenge to FMCS's operations, therefore, is predicated on the injury many of them have suffered due to delays caused by the lack of mediators. Defendants do not explain how an order from this Court vacating the policy and requiring defendants to reverse the RIF would not remedy the injury caused by the delay. Instead, defendants' argument that plaintiffs are attempting to "vindicate the proper operation of FMCS" is more accurately characterized as a challenge to the scope of relief that plaintiffs seek. *See Fla. Decides Healthcare, Inc. v. Byrd*, 2025 WL 1884799, at *6 n.14 (N.D. Fla. July 8, 2025) ("Standing and scope of relief are related, but different, and this Court intends to frame any injunction so that it does not reach broader than necessary to afford the parties relief to which they may be entitled."); *see also Lewis v. Casey*, 518 U.S. 343, 357–60 (1996) (holding that the *breadth* of the injunctive relief was not justified by the alleged injury while implying that the plaintiffs could have standing for narrower relief). The Court addresses the scope of relief below.

B. **Plaintiffs' claims are not administratively channeled**

Defendants next argue that plaintiffs lack standing to "stand in the shoes of FMCS employees who have been placed on leave." Dkt. 80 at 19–20. Defendants' argument is puzzling, as it does not appear to raise any challenge to the traditional elements of Article III standing—injury in fact, causation, and redressability—even though it is phrased as an argument about standing. Instead,

4

defendants appear to be arguing that the claims are administratively channeled and must be brought through the Office of Special Counsel (OSC), the Merit Systems Protection Board (MSPB), and the Federal Labor Relations Authority (FLRA).[5]

While administrative channeling has no impact on Article III standing, the Supreme Court has recognized that certain claims brought by federal employees must be brought through administrative channels as a matter of statutory jurisdiction. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012). Notably, though, the Supreme Court has distinguished those channeled disputes from cases where "the suit is wholly collateral to a statute's review provisions; and [where] the claims are outside the agency's expertise." *Id.* at 15 (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010)) (internal quotation marks omitted). Both circumstances are present here.

First, the suit is clearly collateral to the statutes' review provisions and is outside of the relevant agencies' expertise. The review provisions that defendants cite are intended to provide employment protections for federal employees. For example, the OSC "protect[s] employees, former employees, and applicants for employment from prohibited personnel practices." 5 U.S.C. § 1212(a)(1). The MSPB similarly protects federal employees from improper employment actions. *Id.* § 1204(a). And the FLRA is dedicated to disputes between agencies and labor unions that represent the agencies' employees. *Id.* § 7105(a). The challenge that plaintiffs raise—an argument that the RIF injured them due to a reduction in services that the agency provides—is wholly collateral to the question of whether there were improper personnel practices.

To illustrate why the questions are collateral and distinct, consider two hypotheticals. First, if defendants had offered—and all FMCS mediators accepted—generous and non-coercive voluntary buyouts, there would appear to be no claim of any prohibited personnel practices for the agencies to consider. But the lack of mediators would still give rise to an injury to plaintiffs. On the other hand, if FMCS had replaced all the mediators with personal friends of the agency's director, plaintiffs might not have a demonstrable injury (since their bargaining sessions could continue with the new mediators), but the laid-off mediators would potentially have a valid claim of a prohibited personnel practice. The questions are thus distinct, and the challenge here is wholly collateral to any challenges that could be brought before the agencies.

Second, the matter appears to be wholly outside of the agencies' expertise. The agencies are experts on personnel practices (OSC and MSPB) and federal agency-labor union relations (FLRA). The challenges raised by plaintiffs relate to the propriety of the elimination of FMCS's services to plaintiffs, which are far afield of the areas that the agencies have expertise—namely, claims made by terminated employees. Plaintiffs' claims are therefore not channeled through the administrative process.

---

[5] The Court questions whether plaintiffs would even be able to raise claims with these agencies, given that they are not, and do not represent, federal employees. However, since the parties do not address the issue, the Court does not consider that factor in reaching its decision.

### C. Plaintiffs' claims are ripe

Defendants finally argue that plaintiffs' claims are unripe. This fails, as the argument misunderstand the nature of the plaintiffs' claims. Plaintiffs allege harms from disrupted negotiations that happened at the time of the policy's implementation. Those harms can't be branded as speculative.

In their briefing, defendants argue that "Plaintiffs' alleged potential future injuries cannot form the basis for" the Court's jurisdiction. Dkt. 80 at 22. Even assuming, *arguendo*, that plaintiffs' expected injuries—delayed *future* negotiations with employers—are not sufficiently definite to provide Article III standing, defendants do not address plaintiffs' claims that are rooted in the past. Plaintiffs' operative complaint is replete with allegations that ongoing negotiations were disrupted. Dkt. 75 ¶¶ 131–51. Even if defendants are right that plaintiffs cannot use expected future disruptions to demonstrate standing, a question that the Court does not resolve, plaintiffs can still demonstrate an Article III injury from the disrupted negotiations that were in progress at the time of the policy's implementation.

## II. The policy is reviewable under the APA and is "arbitrary, capricious," and "not in accordance with law"

As the Court concludes that the plaintiffs have standing to pursue their claims, the Court next turns to plaintiffs' claims under the Administrative Procedure Act (APA). The Court holds that the policy constitutes final agency action, that judicial review is not precluded, and that the policy is "arbitrary, capricious," and, with respect to the healthcare plaintiffs, "not in accordance with law." 5 U.S.C. § 706(2)(A).

### A. The policy to limit mediation services is final agency action

Courts are limited to reviewing "final agency action." 5 U.S.C. § 704. Defendants do not appear to dispute finality; instead, they argue that the policy does not constitute agency action at all.[6] Dkt. 80 at 26. The Court holds that the policy is agency action and is thus reviewable under the APA.

The APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). A "rule" is defined broadly and includes, among other things, "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." *Id.* § 551(4).

The policy limiting which negotiations qualify for a FMCS mediator is well within § 551(4)'s definition of "rule" and therefore constitutes "agency action" under § 551(13). FMCS leadership has adopted what appears to be a numerical threshold under which no mediators will be provided

---

[6] Defendants note in passing that a challenged action must be final, Dkt. 80 at 26–27, but do not make any legal argument as to why the policy and RIF were not final agency actions.

6

in most cases. That qualifies as a "statement of general or particular applicability and future effect" and "prescribe[s] . . . policy." *Id.* § 551(4).

Defendants do not meaningfully contest that conclusion, nor do they even pass upon the statutory text. Instead, they argue that the policy does not constitute "agency action" because it "is fundamentally a challenge to FMCS's operations, including staffing decisions and determinations of criteria in evaluating whether to become involved in a mediation . . . [which] is the opposite of the discrete, circumscribed agency action that is required for review under the APA." Dkt. 80 at 27. Defendants' argument is unavailing. The policy at issue in this case is clear and discrete, involving specific numerical thresholds. That the policy ultimately implicates "staffing decisions" does not make a challenge to the policy akin to a challenge to amorphous staffing policies. Instead, plaintiffs only challenge staffing insofar as it relates to the numerical thresholds that defendants have implemented. The policy is thus final agency action that may be challenged under the APA.

### B. The policy is reviewable under the APA

The Court next considers whether the APA precludes judicial review of plaintiffs' claims. Judicial review under the APA is precluded where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). "This exception to the availability of judicial review 'applies only in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Westchester v. U.S. Dep't of Hous. & Urb. Dev.*, 778 F.3d 412, 419 (2d Cir. 2015) (quoting *Sharkey v. Quarantillo,* 541 F.3d 75, 91 (2d Cir. 2008)). That narrow exception does not apply to the two statutes cited by the parties that give rise to FMCS's mediation authority.

#### 1. Review of the healthcare plaintiffs' claims is not precluded

The Court first considers the healthcare plaintiffs—SEIU Healthcare Minnesota & Iowa, SEIU Committee of Interns and Residents, and United Nurses Association of California/Union of Health Care Professionals. Congress required FMCS, when "notice is given" to it as provided by statute, to use its "best efforts, by mediation and conciliation, to bring [negotiating parties] to agreement" "[w]henever the collective bargaining involves employees of a health care institution." 29 U.S.C. § 158(d)(4), (d)(C). That language creates a mandatory duty on behalf of FMCS to mediate, when called upon, in the healthcare industry.

Defendants argue that the "best efforts" qualifier means that FMCS's obligations are purely discretionary. Dkt. 80 at 26. Defendants appear to suggest that FMCS need not act at all upon a request for intervention in the healthcare industry. As best as the Court can tell, they appear to read "best efforts" to allow for whatever efforts are possible, with a given staffing level that defendants can choose in their sole discretion.

That is, to put it mildly, an unnatural reading of the statute. The sentence with the "best efforts" qualifier says that FMCS "*shall* promptly communicate with the parties and use its best efforts, by mediation and conciliation, to bring them to agreement." 29 U.S.C. § 158(d)(C) (emphasis added). Rather than providing discretion as to *whether* services are provided, the "best efforts" qualifier serves only to acknowledge that FMCS—no matter how hard the mediator may work—cannot

ensure an agreement. In short, the statute indicates that FMCS *must* provide mediation and conciliation services upon request and should use its "best efforts" *during* the provision of such services to reach an agreement.

This reading of the statute is reinforced by the communication requirement that precedes the "best efforts" phrase. The requirement to promptly communicate with the parties is unqualified. But under defendants' reading, the decision of whether to accept a particular case is purely discretionary. It would make little sense for Congress to mandate FMCS to communicate with parties, only to completely drop any involvement in a case on a whim because it decided that its "best efforts" involved doing nothing. The Court therefore concludes that FMCS's policy in the healthcare industry is subject to judicial review.

### 2. *The remaining plaintiffs may also seek relief under the APA*

Disputes outside of the healthcare industry are not governed by the same statute. Instead, Congress has provided that FMCS "may proffer its services in any labor dispute in any industry affecting commerce . . . whenever in its judgment such dispute threatens to cause a substantial interruption of commerce." 29 U.S.C. § 173(b). While this statute affords FMCS more discretion, it does not foreclose judicial review.

In arguing against review, defendants point to Congress's use of the word "may" and the statute's statement that FMCS should use "its judgment" in determining when to mediate. But the existence of some discretion does not mean that judicial review is unavailable; after all, the APA explicitly charges courts with judging when agencies have "abuse[d]" their discretion. 5 U.S.C. § 706(2)(A).

The Supreme Court's decision in *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1 (2020), is instructive. There, the Supreme Court held that the Department of Homeland Security's recission of the Deferred Action for Childhood Arrivals program, which granted certain undocumented individuals protection against removal, was reviewable under the APA. *Id.* at 17–19. Although the Supreme Court acknowledged that "an agency's decision not to prosecute or enforce is generally committed to an agency's absolute discretion," it held that "establish[ing] a clear and efficient process for identifying individuals who met [] enumerated criteria" was more than mere nonenforcement. *Id.* at 17–18 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985)) (cleaned up).

The same is true here. The challenged policy at issue in this case is not merely the refusal to mediate any specific dispute. Rather, plaintiffs challenge an explicit numerical threshold established by defendants to determine when they will provide mediation and conciliation services. That is "an action that provides a focus for judicial review." *Id.* at 18 (quoting *Chaney*, 470 U.S. at 832) (cleaned up).

In fact, the only cases defendants cite in support of their position are *Chaney* and *Lincoln v. Vigil*, 508 U.S. 182 (1993). *Chaney* involved a lawsuit seeking to force the Food and Drug Administration to prevent specific alleged violations of the Federal Food, Drug, and Cosmetic Act.

470 U.S. at 823. *Lincoln* involved "[t]he allocation of funds from a lump-sum appropriation." *Lincoln*, 508 U.S. at 192. Both are the prototypical issues "traditionally regarded as committed to agency discretion." *Id.* And outside of those "rare instances," the "strong presumption that Congress intends judicial review of administrative action" applies. *Westchester*, 778 F.3d at 419 (quoting *Conyers v. Rossides,* 558 F.3d 137, 143 (2d Cir. 2009)). The Court thus concludes that the policy is also reviewable with respect to the non-healthcare plaintiffs.

### C. The policy is "arbitrary, capricious," and "not in accordance with law"

Defendants do not raise any challenge to plaintiffs' contention that the policy cannot prevail under the "arbitrary and capricious" standard. But for completeness, the Court considers the question and agrees with plaintiffs that the policy must be set aside.

When reviewing agency action under the APA, courts must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious . . . or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Court holds that the policy is arbitrary and capricious with respect to all plaintiffs, and "not in accordance with law" with respect to the healthcare plaintiffs.

Review under § 706(2)(A) is deferential, and the Court is cautious to not "substitute its judgment for that of the agency." *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Still, an agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 168 (1962)). FMCS has failed to do so here.

The policy here contained no explanation whatsoever. FMCS set fixed numerical floors on the size of bargaining units whose negotiations it was willing to mediate, Dkts. 63-7 at 80, 63-8 at 34, and defendants do not point to any part of the record where they provide any explanation as to how the limits were determined. The numbers appear to be (quite literally) arbitrary. To be clear, the Court does not suggest that there are no permissible standards that FMCS could set to limit the number of non-healthcare negotiations it mediates if it followed the appropriate process. But it has provided no reasoning, and the Court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *State Farm*, 463 U.S. at 43 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

Further, in the healthcare industry, defendants' policy is also invalid for the independent reason that it is "not in accordance with law." 5 U.S.C. § 706(2)(A). Given that FMCS is required under 29 U.S.C. § 158(d)(C) to provide mediation and conciliation services to all bargaining parties in the healthcare industry, defendants' policy limiting services to only a subset of healthcare bargaining units runs contrary to the plain text of the statute.

### D. Plaintiffs are entitled to vacatur

The final question under the APA is what relief should be granted to plaintiffs. The statute directs the Court to "hold unlawful and set aside agency action" found to violate the APA. 5 U.S.C. § 706(2). The parties dispute what it means to "set aside" agency action.

Traditionally, courts have understood "set aside" to mean "vacate." *Guertin v. United States*, 743 F.3d 382, 388 (2d Cir. 2014) ("In the usual case, when an agency violates its obligations under the APA, we will vacate a judgment and remand to the agency to conduct further proceedings."); *see also Nat. Res. Def. Council v. EPA*, 658 F.3d 200, 220 (2d Cir. 2011) (vacating an EPA order after finding that it violated the APA); *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 830 (2024) (Kavanaugh, J., concurring) ("The APA incorporated that common and contemporaneous meaning of 'set aside.' When a federal court sets aside an agency action, the federal court vacates that order—in much the same way that an appellate court vacates the judgment of a trial court.").

Defendants point to a concurrence written by Justice Gorsuch that calls into question this well-settled understanding. *See United States v. Texas*, 599 U.S. 670, 693–704 (2023) (Gorsuch, J., concurring) (questioning whether "set aside" in the APA allows vacatur). But concurrences are not binding, and defendants point to no case where a court has endorsed their reading of the APA. In fact, when the Supreme Court in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), restricted the ability of district courts to grant universal relief outside of the administrative law context, it took pains to note that its holding should not be read to "resolve[] the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action." *Id.* at 847 n.10.

In the absence of any overriding authority, the Court follows guidance from the Second Circuit in *Guertin* and *NRDC* and vacates the policy. Although defendants argue that the Second Circuit may not have had an opportunity to consider Justice Gorsuch's concurrence yet, Dkt. 94 at 13, the Court leaves it to the Second Circuit (and the Supreme Court) to decide if circuit precedent should be overruled. FMCS's policy is therefore vacated, and it is ordered to reverse any actions—chiefly the RIF—taken in accordance with the invalidated policy. The Court declines to issue an injunction at this time, as plaintiffs conceded at oral argument that an injunction is not necessary to provide them with complete relief.

## III. The Court does not address plaintiffs' constitutional challenges

In addition to claims under the APA, plaintiffs raise separation of powers, Take Care Clause, and *ultra vires* challenges. As plaintiffs agreed at oral argument that no injunctive or other further relief was necessary should the Court vacate the policy under the APA, the Court declines to consider the additional arguments.

## IV. The Court does not presently address the "new" FMCS policy

At oral argument, plaintiffs cited an alleged new policy by FMCS to limit mediation to bargaining units of 250 or more employees outside of the healthcare industry (and to have no mini-

mum for the healthcare industry). At the Court's request, plaintiffs submitted documents suggesting such a policy. Dkt. 122-1. Defendants responded that the document appeared to be outdated, and their counsel submitted an updated document that they say reflects the current policy. Dkt. 123. The new document appears to have a policy that is functionally identical to the one cited by plaintiffs. Dkt. 123-1. Defendants claim that the policy reflected in the document was motivated by an earlier executive order than the one that gave rise to this case. Dkt. 123 at 1. In short, defendants argue that operating consistent with the policy as reflected in the document furnished to the Court will take things back to the way FMCS worked before the policy challenged in this case was put into effect.

This "new" policy hasn't been challenged in plaintiffs' complaint. There has been no briefing on it, and it is not immediately apparent whether these plaintiffs have standing to challenge it. For these reasons, the Court declines to issue a ruling at this juncture on whether this policy may be enforced. Nevertheless, the Court notes that the strictures of the APA—and the requirement that any "rule" that constitutes "final agency action" must not be "arbitrary" or "capricious"—equally apply to any remedial policy that defendants may put into effect now or in the future. 5 U.S.C. §§ 551(4), (13); 704, 706(2)(A). If plaintiffs wish to challenge this new policy, they may do so in a subsequent case.

## CONCLUSION

Plaintiffs' motion for summary judgment is GRANTED. Defendants' policy disallowing the assignment of FMCS mediators to negotiations and disputes in the healthcare industry where the bargaining units are smaller than 250 employees, or in other industries where the bargaining units are smaller than 1,000 employees, is hereby set aside and vacated. Defendants are ordered to reverse the reduction in force at FMCS justified by that policy.

Defendants' motion for dismissal or summary judgment is DENIED.

The Clerk of Court is respectfully directed to terminate the motions at Dkts. 67 and 79, to enter judgment for plaintiffs, and to close the case.

SO ORDERED.

Dated: December 30, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge